THORNBERY, Appellant, v. MGS Co., INC., and others, Respondents.

*No. 92. Argued March 2, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 355.)

594

For the appellant there was a brief by *Ray T. McCann,* attorney, and *John T. McCann* of counsel, both of Milwaukee, and oral argument by *Ray T. McCann* and *John T. McCann.*

For the respondents there was a brief by *Davis, Kuelthau, Vergeront & Stover,* attorneys, and *John G. Vergeront* of counsel, all of Milwaukee, and oral argument by *John G. Vergeront.*

BEILFUSS, J.   The plaintiff-appellant, Thornbery, contends upon appeal (1) that the pension plan provided by

defendant, MGS Co., Inc., was supported by adequate consideration and therefore enforceable; (2) that the trial court erred in excluding evidence of defendants' agreement to assume liability for accrued pension benefits; and (3) that the pension plan constituted an enforceable third-party beneficiary contract.

The respondents argue: (1) that there is no contractual obligation to fully fund the pension plan; (2) that there is no consideration for such an agreement; and (3) that the findings of fact are not against the great weight and clear preponderance of the evidence.

Baso, Inc., was the predecessor of the defendant-respondent MGS Co., Inc. For many years Baso manufactured and sold gas controls and other devices.[2]

For several years prior to 1961, Baso had not been very successful financially. In the year 1960 its gross business was about $8,000,000 and the net loss about $300,000. Its loss in 1961 was in excess of $1,000,000. Primarily because of these unfortunate financial circumstances Baso arranged to sell most of its assets to a competitor, Penn Controls, Inc. The negotiations between the two companies resulted in a written contract whereby Penn Controls purchased almost all of the operating assets of Baso, Inc., except the real estate.

The contract entered into was dated August 4, 1961, and provided Penn Controls was to take over the operations of Baso on September 1, 1961. The agreed price for the assets of Baso which were taken over by Penn Controls was $100,000 cash, plus the value of the inventory to be paid for by four and one-half percent debentures convertible to stock and issued by Penn Controls. Because of some delay in taking the inventory the sales price of $100,000 cash and $3,300,000 in convertible ten-year debentures was not paid until December 19, 1961.

---

[2] Baso, Inc., also wholly owned a subsidiary, Vultel, Inc., and its salaried employees were included in the various pension plans.

As a part of the sales transaction the name Baso, Inc., was transferred to Penn Controls and the operation continued as the Baso Division of Penn Controls. What had been Baso, Inc., became MGS Co., Inc. MGS Co. was primarily a holding company. From the assets of Baso, Inc., it retained the real estate located in Milwaukee, a small amount of inventory, some patent royalty rights, and its principal asset—the convertible debentures of Penn Controls.

The employees, both salaried and hourly waged of Baso, Inc., became the employees of Baso Division of Penn Controls, with the exception of three officer-type salaried employees who remained with MGS Co.

Since 1950 there had been three pension plans for the salaried employees.[3] The first plan was adopted in 1950 and terminated in 1958. After negotiations with a union representing some but not all of the salaried employees, a second plan was adopted by Baso, Inc., in 1960. The plan was for past service and future service and all contributions to the fund were to be made by Baso. However, the plan did provide:

"4.1—EMPLOYER CONTRIBUTIONS
"The Employers intend, but do not guarantee, to make such contributions as may be required to maintain the trust fund, established for the purposes of the Plan, on a sound actuarial basis. Neither the Employers, nor any of their officers or Employees, nor any member of their respective Boards of Directors or agents, guarantee, in any manner, the payment of such benefits."

On October 24, 1961, Penn Controls agreed that the pension plan set up by Baso for salaried employees would continue in effect but its liability for contributions to the fund would be limited to fund benefits based upon service rendered after September 1, 1961.

---

[3] There also have been pension plans for the employees paid on an hourly basis but these plans have been fully funded and are not at issue in this litigation.

Baso, Inc., had not made all of the contributions necessary to fully fund the pension plan for salaried employees as of September 1, 1961.

On December 15, 1961, the board of directors of MGS Co. (the plaintiff Thornbery was an officer and director), adopted "MGS Co., Inc., Past Service Retirement Plan for Former Salaried Employees of Baso, Inc., and Subsidiaries." The purpose was to give continuity to the plans so that when a salaried employee had worked the requisite number of years and was otherwise eligible, funds would be available for retirement benefits as set forth in the plan. This plan was limited to past services rendered to Baso, Inc., before September 1, 1961.

This litigation is based upon this plan of December 15, 1961.

Included in the 1961 MGS Co. plan are the following provisions:

"2.7—TEMPORARY LIMITATIONS ON PENSIONS BY REASON OF GOVERNMENTAL REGULATIONS

"  . . .

"(B) *Limitations on Pensions:* If, at any time prior to December 1, 1970, the Plan is terminated or the current costs thereof are not met, the benefits payable to or on account of any Employee to whom this section is applicable shall not exceed an amount equal to that which can be provided from the contributions made by the Employers under the Plan in respect of him . . . .

"(C) *Procedure Upon Termination of Plan:* In the event the Plan is terminated prior to December 1, 1970, that portion of the asset value of the trust fund arising from contributions made under the Plan in respect to Employees whose benefits are subject to the limitations specified in Paragraph (B) above, in excess of the amount required to provide the benefits to which they may be entitled after application of the provisions of this section, will be apportioned to the other Employees, retired Employees and terminated Employees in accordance with the provisions of Section 6.5 hereof.

"  . . .

"**Miscellaneous provisions respecting the company**

"4.1—COMPANY CONTRIBUTIONS

"The Company intends, but does not guarantee, to make such contributions as may be required to maintain the trust fund, established for the purposes of the Plan, on a sound actuarial basis. Neither the Company, nor any of its officers or Employees, nor any member of its Board of Directors or agents, guarantee, in any manner, the payment of such benefits.

"    .   .   .

"4.4—TERMINATION OF PLAN

"The Plan may be terminated by the Company as to all or part of the Employers, by resolution of its Board of Directors specifying that the Plan is being so terminated. The Plan shall automatically terminate upon adjudication by a court of competent jurisdiction that the Company is bankrupt or insolvent—whether such proceeding be voluntary or involuntary—upon the complete dissolution of the Company or upon its merger, consolidation or reorganization without provision being made by its successor, if any, for the continuation of the Plan.

"    .   .   .

"**Trust fund and trustee**

"    .   .   .

"6.3—BENEFITS SUPPORTED ONLY BY TRUST FUND

"Any person having any claim under the Plan will look solely to the assets of the trust fund for satisfaction. In no event will the Company, any of its officers, members of its Board of Directors or agents, or the Trustee or any successor trustees be liable in his individual capacity to any person, under the provisions of the Plan or of the Trust Agreement.

"    .   .   .

"6.5—DISTRIBUTION OF TRUST FUND UPON TERMINATION OF PLAN

"In the event of termination of the Plan for any reason, the trust fund shall be apportioned and distributed in accordance with the following procedure:

"    .   .   .

"(C) The Committee shall apportion the asset value as of the date of termination in the manner set forth below, on the basis that the amount required to provide

any given pension shall mean the actuarially computed single-sum value of such pension, except that if the method of distribution determined under Paragraph (B) above involves the purchase of an insured annuity, the amount required to provide the given pension shall mean the single premium payment payable for such annuity."

The following contributions were made by Baso, Inc., and MGS Co.:

| Year | Contribution |
|------|-------------|
| 1960 | $ 6,900.00 |
| 1961 | 36,455.00 |
| 1962 | 15,000.00 |
| 1963 | 15,000.00 |
| 1964 | 30,000.00 |
| 1965 | 30,000.00 |
| Total | $133,355.00 |

In March of 1966, at the annual meeting, the stockholders elected an entirely new board of directors. It appears that the new board was elected because of its announced intention to terminate the salaried employees' pension fund without fully funding it and to dissolve the corporation. On December 14, 1966, the plan was terminated and steps taken to dissolve MGS Co.[4] However, $225,000 has been set aside to meet any liability the company may have under the pension plan. An actuary testified that the trust fund had a balance of $137,726.39, and that an additional $222,762 would be needed to fully fund the plan.

The plaintiff-appellant alleges that if the plan is not funded beyond the amount contributed to date six employees who have retired or are eligible for retirement

[4] By this time nearly all of the assets had been converted to cash, including the debentures.

will receive full pensions; fifty employees who have worked fifteen years and reached forty-five years of age will receive about 33 percent of the pension provided for in the plan; and that the remaining fifty-eight employees will receive nothing.

The respondents, in their brief, assert that if the plan is fully funded Mr. Thornbery, the appellant, will receive over 14 percent of the total fund, and Mr. Mihm, another former director, about five percent.

The plaintiff-appellant, Thornbery, contends that the plan and other communications to the employees constitute a promise to provide for retirement benefits and that the continued employment in the Baso Division of Penn Controls constitutes adequate consideration.

We start with the rule that pension trusts are to be liberally construed in favor of the employees, and the further legal proposition that, "[n]oncontributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period." *Voight v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 116, 128 N. W. 2d 411.

Thornbery argues that MGS Co. is the successor to Baso, Inc., entitled to Baso's assets and subject to its liabilities. Shortly after Baso, Inc., announced its pension plan for salaried employees in 1960, it prepared a booklet and distributed it to the employees. The booklet set forth in considerable detail provisions of the plan as to eligibility and benefits; however, it also contained the following admonition:

"While the company hopes to continue making sufficient contributions to the trust to carry out the provisions of the Plan indefinitely, the company will be under no legal obligation or liability if it finds it is necessary to reduce, suspend, or terminate its contributions to the

Plan. However, such funds as are accumulated in the fund shall be retained for the sole benefit of participants of the Plan."

On August 28, 1961, when Penn Controls was about to take over Baso's operations, Mr. Thornbery as vice-president of Baso, Inc., wrote to all the employees advising them that as of September 1st they would become employees of the Baso Division of Penn Controls and stated: "Benefits relating to retirement, health and welfare, and vacations continue in effect on an uninterrupted basis. Overtime provisions remain unchanged."

In addition, by means of an offer of proof, the plaintiff offered in evidence an exhibit which was a confidential office memorandum that described the conference between representatives of Penn Controls and Baso, Inc. The memorandum refers to a conference of June 26 and 27, 1961; it was written by H. L. Kunze, a director of Baso, and states, in part: "Baso is to assume liability for all benefits accrued to July 31, 1961, on the insured hourly retirement plan and the trusteed salary retirement plan and to continue future funding contributions for such liability." The trial court refused to admit this exhibit (No. 10) into evidence. The appellant claims this ruling was prejudicial error and that the pension plan of 1960 by Baso, the pension plan of 1961 by MGS Co., the letter to the employees of August 28, 1961, and the rejected conference memorandum construed together constitute a promise to completely fund the pension plan for salaried employees through August of 1961.

We do not believe the rejection of Exhibit 10 from the evidence was prejudicial error, if error at all. Parol evidence or prior or contemporaneous written evidence can be introduced if the terms of the written instrument in question are ambiguous or incomplete.

Our examination of the Baso pension plan of 1960, and the MGS Co. plan of 1961, does not allow us to conclude that either instrument is ambiguous or incomplete. If

Exhibit 10 clarifies Exhibit 9, the sales agreement between Baso and Penn Controls, it is immaterial because the action is based upon the 1961 MGS Co., pension plan.

The disclaimer provisions in both plans clearly state that the pension plans can be terminated at any time and that there is no obligation or liability for any unfunded portion on Baso, MGS Co., or its officers and directors. Exhibit 10 conceivably could be material in an action to reform a contract but we are not dealing with reformation; we are construing the terms of a written instrument, the MGS Co. plan of 1961, and this instrument clearly reserves the right to terminate the pension plan at any time and requires it upon dissolution of the company. It also clearly relieves the company, its officers and directors, from any liability for any unfunded portion.

The booklet describing the plan advises the employee of this contingency and the letter only says, in effect, we carry on as before.

It is our opinion that the 1961 MGS Co. pension plan for salaried employees does not constitute a promise to fully fund the plan for past service of Baso employees.

The plaintiff, Thornbery, further argues that the Baso employees were induced to work for Penn Controls partially because of the expectation of full pension rights, and this work by them for Penn Controls was a detriment to them. He also argues that because MGS Co. held substantial amounts of Penn Controls' convertible debentures it was advantageous and valuable to MGS Co. that experienced employees, familiar with all Baso operating techniques, be retained by Penn Controls. From these arguments he concludes MGS Co. should not now be allowed to refuse to perform its part of the bargain by not fully funding the pension plan for past service.

Sufficient consideration to support a promise to fully fund a pension plan could conceivably be found either in

a detriment to the employees by accepting jobs with Penn Controls or a benefit to MGS Co. through the success of Penn Controls; yet, such an argument fails here for two reasons. First, there is no adequate or sufficient proof in the record that employees went to work for Penn Controls because of any pension inducement, or that the convertible debenture benefits of MGS Co. were in any way enhanced by Baso's former employees. Second, MGS Co. did not make an absolute promise to pay for the funding of the pension plan for past services.

The plaintiff, Thornbery, also contends that he and the other salaried employees are third-party beneficiaries under a contract between Baso and Penn Controls. He asserts this contract is evident from the memorandum of the conference of June 26–27, 1961, between representatives of Baso and Penn Controls. (This Exhibit 10 was excluded from the evidence and heretofore referred to.) Exhibit 10 is an office memorandum marked "Confidential;" it is superseded by Exhibit 9, the contract of sale between Baso and Penn Controls. The sales agreement defines what liabilities of Baso, Inc., Penn Controls will assume. It does not identify the liabilities of Baso it will not assume.

Baso and its successor, MGS Co., had the same liability to the salaried employees' pension plan of 1960 after the sale to Penn Controls as it had before. We have determined above that under the specific provisions of the 1960 pension plan there was no promise or liability to fully fund the salaried employees' pension plan.

In order for the plaintiff to qualify as third-party beneficiary it must first be shown that the contracting parties had a contract for the benefit of a third party. Nowhere in the evidence received, nor in Exhibit 10, does it show an agreement whereby Penn Controls agreed or insists that Baso or its successor, MGS Co., fully fund the pension plan in question. If Exhibit 10 was

admitted as showing an agreement between Baso and Penn Controls it only provides that Baso is to assume liability and continue funding. Again going back to the pension plans, we have determined they do not make it a duty to fully fund the plan.

Our review of the entire record and the cases cited by counsel convinces us that neither Baso nor MGS Co. agreed to fully fund the salaried employees' pension plan and that the trial court properly dismissed the plaintiff's complaint.

*By the Court.*—Judgment affirmed.