SCHLOSSER, and another, Plaintiffs-Respondents, v.
ALLIS-CHALMERS CORPORATION, Defendant-Appellant.

Supreme Court

*No. 77–596. Argued October 2, 1978.—Decided November 28, 1978.*
(Also reported in 271 N.W.2d 879.)

228

For the appellant there were briefs by *Laurence C. Hammond, Jr., Larry J. Martin* and *Quarles & Brady* of Milwaukee, and *Theophil C. Kammholz, Richard H. Schnadig* and *Vedder, Price, Kaufman & Kammholz,* with

oral argument by *Theophil C. Kammholz,* all of Chicago, Illinois.

For the respondents there was a brief by *Robert P. Harland, Richard C. Ninneman, Michael J. Herbert* and *Whyte & Hirschboeck, S.C.,* with oral argument by *Mr. Ninneman,* all of Milwaukee.

WILLIAM G. CALLOW, J.   This is an appeal from an interlocutory summary judgment adjudging the defendant Allis-Chalmers Corporation liable to the plaintiffs, a class of retired, salaried, nonunion employees, for breach of a contractual obligation to provide noncontributory (free) life insurance benefits to class members over age sixty-five. We conclude that the trial court did not abuse its discretion in allowing the action to proceed on behalf of the plaintiff class and that it properly granted the plaintiffs an interlocutory summary judgment as to liability.

In 1930 Allis-Chalmers made group life insurance available to its salaried, nonunion employees on a contributory basis. The employee was required to pay part of the premium before and after reaching age sixty-five. Effective January 1, 1956, the company amended its group life policy to provide noncontributory insurance for nonunion, salaried employees and retirees over age sixty-five. A retired president of Allis-Chalmers testified that the 1956 revision was made in response to increasing benefits extended to union employees and was also designed to attract and maintain high-quality personnel. The 1956 Metropolitan Insurance Company policy provision relating to free life insurance after age sixty-five was incorporated into a successor Aetna policy in September, 1972. While the Metropolitan and Aetna policies from 1956 to 1973 provided that salaried employees shall not be required to contribute to the cost of the insurance, the policies also provided that Allis-Chalmers could choose to terminate coverage of its retired employees.

Certificates issued to employees from 1956 through 1967 noted coverage would cease on the discontinuation of the policy or on the employee's termination for cause. After 1967 the certificates contained the additional provision that the policy may be amended or discontinued by Allis-Chalmers. Allis-Chalmers from time to time distributed various brochures and booklets stating that insurance after age sixty-five was free. The booklets also stated that Allis-Chalmers reserved the right to amend or terminate the plan. Upon an employee's retirement, the company would send a letter to the retiree describing the available benefits and stating that coverage would be continued without cost to the retiree.

By letter dated December 29, 1972, Allis-Chalmers informed members of the plaintiff class that effective February 1, 1973, the company would require them to contribute to the cost of the life insurance at the rate of one dollar per thousand for that part of the optional coverage which had been provided by Allis-Chalmers between 1956 and 1973 without cost.

This action by retired nonunion, salaried employees, on behalf of themselves and all such retired employees, was commenced by service of a summons on Allis-Chalmers on January 15, 1973. An amended complaint alleged that Allis-Chalmers' policy of providing free insurance to employees over sixty-five became part of the contract of employment which Allis-Chalmers breached by requiring contribution of the retirees and, alternatively, that the plaintiffs relied on the promise of free life insurance in becoming or continuing as an Allis-Chalmers employee, thus estopping Allis-Chalmers from requiring contribution. Allis-Chalmers demurred to the complaint on the ground that on the facts alleged the action was not properly maintainable as a class action. The trial court overruled the demurrer, and this court affirmed in *Schlosser v. Allis-Chalmers Corp.*, 65 Wis.2d 153, 222 N.W.2d 156 (1974). After the defendant answered, denying that

the action was maintainable as a class action, and denying liability, it reached a settlement with 2,070 of the 2,386 living retirees.

Following extensive discovery proceedings, the plaintiffs moved on January 5, 1977, for an interlocutory summary judgment determining that the defendant breached a contract with the plaintiffs by failing to provide free life insurance to those over age sixty-five. The plaintiffs brought a supplemental motion for summary judgment to confirm the appropriateness of the plaintiff class. On March 2, 1977, the defendant brought a motion for summary judgment in its favor. The court on May 31, 1977, decided that the action was properly maintainable on behalf of a class of salaried, nonunion employees of Allis-Chalmers who retired between January 1, 1956, and February 1, 1973, the heirs and personal representatives of such deceased persons, and the insurance beneficiaries of such deceased persons or their heirs or personal representatives. The court established the requirements for notice to the members of the class. The members could "opt-out" if they wished not to participate. The defendant moved for reconsideration and alternatively for an order requiring potential members to "opt-in" to the litigation or for an order dividing the plaintiff class into various subclasses. The court denied the defendant's motion on July 25, 1977, and approved the form of notice to the class members on August 9, 1977.

On January 4, 1978, the court issued a memorandum decision determining that under Wisconsin law the defendant breached a contract with the plaintiffs to provide free life insurance after age sixty-five. On February 2, 1978, the court rendered an interlocutory judgment in favor of the plaintiffs and denied the defendant's motion for summary judgment. The court issued an order determining the individuals in the plaintiff class. The judgment was entered February 13, 1978. From this judgment, Allis-Chalmers appeals.

There are two issues:

(1) Did the trial court err in determining that the action was properly maintainable on behalf of a class of salaried, nonunion employees of Allis-Chalmers who retired on or after January 1, 1956, and before February 1, 1973, and the heirs or personal representatives of such deceased persons, and the insurance beneficiaries of such deceased employees or their heirs and personal representatives?

(2) Did the trial court err in granting an interlocutory summary judgment determining that the defendant breached a contract with the plaintiff class by requiring members of the class over age sixty-five to make life insurance premium contributions and in denying the defendant's motion for summary judgment?

I

The Wisconsin class action rule, sec. (Rule) 803.08, Stats., permits one person to sue on behalf of others where "the question before the court is one of common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court." This rule is essentially the same as the class action provision embodied in former sec. 260.12, Stats. 1973. *See:* Judicial Council Committee's Note, 1974, to sec. (Rule) 803.08, Stats., 67 Wis.2d at 650. In the first *Schlosser Case, supra* at 169, we said that sec. 260.12, Stats. 1973, requires that the named parties have a right or interest in common with the class, that they be able to fairly represent the class interest, and that joinder of all members be impracticable. The determination whether the action may proceed as a class suit is addressed to the trial court's discretion. It involves a weighing of the benefits to be gained from

disposing of the entire controversy in one proceeding against the difficulties inherent in a single action. *Nolte v. Michels Pipeline Construction, Inc.,* 83 Wis.2d 171, 177, 265 N.W.2d 482 (1978) ; *Schlosser v. Allis-Chalmers Corp., supra* at 172. The defendant here argues that the trial court erred in striking the balance in favor of class treatment because individual questions of fact and law predominate over common ones. The defendant specifically contends that class treatment is inappropriate because: (1) some class members may have retired under a plan different from the Metropolitan-Aetna plan, which is the subject of this suit; (2) there were differing understandings of the plan by various class members; (3) there were differing representations made to different members; (4) there were differing circumstances surrounding the purported acceptance of the offer and reliance upon it; (5) the employment contracts of many class members had no relationship to Wisconsin thus making Wisconsin law inapplicable; and (6) that the trial court had no personal jurisdiction over nonresident plaintiffs.

Whether the differing factual circumstances pointed to by Allis-Chalmers render class treatment inappropriate depends on whether the suggested differences are material to the plaintiffs' claim. *See, e.g.: Nolte v. Michels Pipeline Construction, Inc.,* 83 Wis.2d at 177–80. This court has characterized pension and profit sharing plans as constituting an offer of the stated benefits in exchange for the service of an employee. Upon the employee's completion of the required services, a binding contract is formed under which the employer is obligated to deliver the benefits under the terms of the plan. *Rosploch v. Alumatic Corp. of America,* 77 Wis.2d 76, 81–84, 87–88, 251 N.W.2d 838 (1977) ; *Voigt v. South Side Laundry & Dry Cleaners, Inc.,* 24 Wis.2d 114, 116, 128 N.W.2d

411 (1964) ; *Zwolanek v. Baker Manufacturing Co.,* 150 Wis. 517, 137 N.W. 769 (1912). *See:* 1A *Corbin on Contracts,* sec. 153 (1963). The plaintiffs' amended complaint seeks to place the Allis-Chalmers group life insurance plan within this legal framework of unilateral contract.

Taking Allis-Chalmers' asserted factual disparities in order, we conclude first that the fact that some class members may have worked under a plan different from the Metropolitan-Aetna plan here at issue does not render the trial court's decision to entertain this suit on behalf of this class an abuse of discretion. While there may have been different plans in effect at various plants at various times, all class members were eventually placed under the Metropolitan-Aetna plan. All worked for Allis-Chalmers and in their retirement were receiving free life insurance benefits. All received the same letter describing the policy funding change requiring contribution from retirees. Allis-Chalmers has compiled and introduced statistics showing that various insurance policies remained in effect at its acquired plants for certain periods of time. Yet Allis-Chalmers has not named a single individual in the plaintiff class who did not retire under the Metropolitan-Aetna plan or one with similar provisions as to noncontributory life insurance benefits after age sixty-five. The possibility that some persons retired under a completely different policy cannot, under the circumstances, be said to render the trial court's decision to dispose of the controversy in this class action an abuse of discretion.

The second asserted difference is in employee perception as to the terms of the offer. The subjective perception of the employee is not material because there is no ambiguity in the terms of the contract which would make

appropriate the consideration by the fact finder of extrinsic evidence bearing on the parties' intent. *RTE Corp. v. Maryland Casualty Co.,* 74 Wis.2d 614, 621, 247 N.W.2d 171 (1976). The parties argued and the trial court determined the question of the validity of the reservation in the insurance contract as a question of law. Differing employee understanding of the offer is thus not material to the plaintiffs' claim.

The defendant's third asserted area of factual disparity is in the representations by Allis-Chalmers to the plaintiffs. The plaintiffs' theory of liability rests on the defendant's offered insurance plan as represented in certificates and descriptive literature containing standardized, uniform representations. This case does not involve oral representations or widely varying offers which might render class disposition inappropriate. *See: Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882 (5th Cir. 1973). *Compare: Herbst v. International Telephone & Telegraph Corp.,* 495 F.2d 1308 (2nd Cir. 1974), with *Clark v. Watchie,* 513 F.2d 994 (9th Cir. 1975). The record contains facts from which the trial court may properly have inferred the representations to all members of the class were sufficiently standardized so as to make class treatment an effective way of determining the case. [1]

Fourth, the defendant argues that there is no commonality of acceptance or reliance on the offer. If each employee must testify that he or she had actual knowl-

---

[1] All of the descriptive literature in the record contains representations that employees or retirees over age sixty-five will not be required to contribute to the cost of the insurance and that the company reserved the right to terminate or amend the plan. The company admitted in answering the plaintiffs' first set of interrogatories (No. 38) that "[w]ritten communications descriptive of the group term life insurance policy in effect as of each such communication were directed to all of the persons [remaining in the plaintiff class]."

edge of the terms of the plan in beginning or continuing in the defendant's employ, the case would not be appropriate for class treatment. If, on the other hand, the court may infer the requisite knowledge from the distribution of company literature, the class action device would not be improper.

According to basic principles of contract law, creation of a binding unilateral contract requires that the offeree perform the requested act with the intent of accepting the offer. *Frey v. Fond du Lac*, 24 Wis. 204 (1869); *State ex rel. Dockstader v. Brown*, 20 Wis. 302 (*287) (1866). However, intent to accept may be inferred from the offeree's performance of the act. *Eycleshimer v. Van Antwerp*, 13 Wis. 610 (*546) (1861). The Restatement (Second) of *Contracts*, sec. 55 (Tent. Draft, 1963), eliminates from its statement of the basic rule the requirement of "intent to accept" replacing it with the requirement of "manifestation of assent." Comment *c* states in part:

"The offeree's conduct ordinarily constitutes an acceptance in such cases only if he knows of the offer. His rendering of the invited performance with knowledge of the offer is a sufficient manifestation of assent, and inquiry into his motives is unnecessary. But the meaning of nonverbal conduct is even more dependent on its setting than the meaning of words. . . . The words or conduct of the offeree may show that he acts gratuitously, or otherwise without reference to the offer. There is then no bargain. . . ."

In this case it does not matter that the group life insurance plan was the employees' sole, or even a significant, motivation in accepting or continuing in Allis-Chalmers' employ. The company's admission that it distributed literature to its employees describing the plan is enough to permit an inference that the employees

worked with general knowledge of the offer. *See: Steppe v. Farber*, 205 Wis. 80, 236 N.W. 530 (1931) ; *Dangott v. ASG Industries, Inc.*, 558 P.2d 379, 383–4 (Okla. 1976), quoting from *Anthony v. Jersey Central Power and Light Co.*, 51 N.J. Super. 139, 143 A.2d 762, 766 (1958). *Compare: Rose City Transit Co. v. City of Portland*, 525 P.2d 1325, 1348–49 (Ore. App. 1974).

The defendant relies on *Thornbery v. MGS Co., Inc.*, 46 Wis.2d 592, 603–04, 176 N.W.2d 355 (1970), for the proposition that liability depends on proof that each employee was induced by the retirement plan to work for the company. In that case the plaintiffs argued that the defendant company was under an obligation to fully fund a pension plan because the employees were induced to work for the company in part because of the expectation of full pension funding and because working for the company was a detriment to them. The court rejected this argument, noting that there was no proof of a pension inducement, and even if there were, MGS did not make an absolute promise to fully fund the plan. *Thornbery* does not require proof of subjective inducement by the plan where the cause of action is based on contract and not promissory estoppel.

The defendant also maintains, in arguing no commonality of acceptance, that the employees retired under differing circumstances, *e.g.*, some were forced to retire. The company admitted, however, that all class members, "retired pursuant to company rules." None were discharged apparently; the offer of group life insurance did not specify a certain level of performance. Nor is it material that some members may have retired before reaching age sixty-five. The rights of the employees under the plan vested on their providing the services required by Allis-Chalmers; attaining age sixty-five was simply a condition precedent under the terms of the contract. In short, these differences do not matter.

The defendant maintains that the trial court erred in determining that this action was properly brought on behalf of the plaintiff class because a proper determination of the rights of the plaintiffs would involve the application of different states' laws. Allis-Chalmers states that of 562 retirees or their estates remaining in the plaintiff class, 239 were hired outside Wisconsin in 21 other states and two countries. This court follows the "grouping of contacts" approach to determine which state law applies to resolve questions of contract. *Handal v. American Farmers Mutual Casualty Co.*, 79 Wis.2d 67, 73–74, 255 N.W.2d 903 (1977). By this method the law of the state with which the contract has its most significant relationship applies.[2] In *Haines v. Mid-Century*

[2] The language of sec. 188 of the Restatement (Second) of *Conflict of Laws* (1971), quoted with approval in *Handal v. American Farmers Mutual Casualty Co., supra,* is as follows:

"§188. Law Governing in Absence of Effective Choice by the Parties

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.

"(2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state

*Insurance Co.*, 47 Wis.2d 442, 451, 177 N.W.2d 328 (1970), this court, quoting from Mr. Justice HEFFERNAN'S opinion in *Heath v. Zellmer*, 35 Wis.2d 578, 151 N.W.2d 664 (1967), cited five factors generally considered by the court in making choice of law determinations:

" 'Predictability of results;
" 'Maintenance of interstate and international order;
" 'Simplification of the judicial task;
" 'Advancement of the forum's governmental interests;
" 'Application of the better rule of law.' "

We believe that these factors are best served by the application of Wisconsin law to this controversy. The record demonstrates that some members of the plaintiff class worked and retired in states other than Wisconsin. However, the company policy decision to provide these benefits for nonunion, salaried employees was a home

---

will usually be applied, except as otherwise provided in §§189–199 and 203."

Comment *h* to sec. 192 of the Restatement (Second) of *Conflict of Laws* (1971) provides in part:

"*h. Group life insurance.* In the case of group life insurance, rights against the insurer are usually governed by the law which governs the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will usually be determined, in the absence of an effective choice-of-law clause and at least as to most issues, not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has his principal place of business."

While this section is specifically addressed to cases involving the rights of employees against the group life insurer, the stated policy underlying the rule applies equally to controversies between employees and their employer, arising out of the administration of group life insurance plans.

office decision emanating from Wisconsin. Public policy favoring the honoring of reasonable expectations requires that the implementation of the policy be uniform throughout the multistate Allis-Chalmers complex. *See: Handal, supra* at 78. It is reasonable to assume that each employee expected the home office to treat all employees of Allis-Chalmers, wherever located, uniformly. The representation of free insurance and the decision to change the plan were made in Wisconsin. Thus predictability of result and maintenance of interstate order strongly favor application of Wisconsin law. Surely the judicial task is simplified by applying the law of a single forum to this controversy. It is evident from our discussion below that we believe the rule we choose to apply under Wisconsin law is the better rule, promoting established state interests in enforcing the legitimate expectations of workers under retirement plans and ensuring that employers treat retired employees fairly. We observe finally that the defendant has simply not shown any persuasive reason to displace the law of the forum. *Hunker v. Royal Indemnity Co.,* 57 Wis.2d 588, 599, 204 N.W.2d 897 (1973).

Finally, the defendant argues that maintenance of a class action involving class nonresident members exceeds the constitutional limits of the jurisdiction of a court of this state. The jurisdiction of state courts over nonresident defendants is limited by the due process clause of the Fourteenth Amendment to those defendants with certain "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310 (1945); *Shaffer v. Heitner,* 433 U.S. 186 (1977). The defendant would have the "minimum contacts" analysis apply to nonresident members of a plaintiff class.

In a well-reasoned opinion by the Kansas court, the court concluded that, while contacts with the forum are

necessary to establish the constitutional predicate for the exercise of judicial power over a defendant, the due process requisites for the exercise of such power over unnamed nonresident plaintiffs are adequate notice and representation. *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 567 P.2d 1292, 1304–07 (1977). Class actions necessarily proceed in the absence of most class members; therefore, the validity of the judgment as to such members should not depend on their relationship with the state but rather it should depend on whether they had adequate notice and opportunity to decide to submit themselves to the court's jurisdiction and whether their interests were properly represented.[3]

The defendant relies on *Klemow v. Time Incorporated*, 466 Pa. 189, 352 A.2d 12 (1976), *cert. denied*, 429 U.S. 828. In that case the court said in dictum that the class may consist only of Pennsylvania residents and non-residents who submit themselves to the jurisdiction of the state court. However, adequate notice and opportunity to "opt-out" would safeguard against asserting jurisdiction over a plaintiff who does not wish to participate.

In *Feldman v. Bates Manufacturing Co.*, 143 N.J. Super. 84, 362 A.2d 1177 (1976), the court stated that absent "affiliating circumstances" with the forum state, a class action judgment cannot effectively bind nonresident members of the class. In that case, however, the defendant was not connected in any way with the forum state, and there was no connection between the litigation and the forum. Allis-Chalmers has its corporate head-

---

[3] Professor Moore and the Reporters for the ALI Restatement of Judgments and a tentative draft of the Restatement (Second) all agree that an otherwise valid judgment obtained in a class action has binding effect as to all members of the class and beyond the territorial limits of the court's jurisdiction. 3B *Moore's Federal Practice*, sec. 23.11(5) (1978); Restatement of *Judgments*, sec. 26 (1942); Restatement (Second) of *Judgments*, sec. 85 (Tent. Draft No. 2, 1975).

quarters in Wisconsin and has long done business here. Clearly this case is different from *Feldman*. To the extent that *Feldman* may be on point, we choose not to follow it.

The defendant admits the propriety of a class suit where the plaintiffs affirmatively "opt-in," electing to be bound. The company objected to the trial court's prescribed notice on the ground that it required affirmative action to opt-out. This is the procedure expressly prescribed by Fed. R. Civ. P. 23(c) (2) (B). The defendant points out that more than a hundred notices were returned as undeliverable. This does not render the notice procedure faulty, however; damages are to be determined in a subsequent proceeding. Any error in computation of the amount of the judgment would be reviewable on an appeal from the final judgment or judgments. The defendant does not otherwise specify the nature of its objection to the "opt-out" notice procedure.

Thus we conclude that the trial court did not abuse its discretion in permitting this case to proceed as a class action on behalf of the plaintiff class.

## II

Allis-Chalmers maintains that disputed issues of fact make summary judgment inappropriate. *See: Matthew v. American Family Mutual Insurance Co.*, 54 Wis.2d 336, 339, 195 N.W.2d 611 (1972) ; *Federal Deposit Insurance Corp. v. First Mortgage Investors*, 76 Wis.2d 151, 250 N.W.2d 362 (1977). In support of its contention that there are material facts in dispute, Allis-Chalmers argues that there is no proof of an unconditional offer of non-contributory benefits after age sixty-five. Allis-Chalmers characterizes the offer as a modifiable package of various

retirement benefits. As we noted above, the construction of a contract ordinarily presents a question of law for the court. *RTE Corp. v. Maryland Casualty Co., supra.* There is no contention here that the terms of the contract were ambiguous, raising an issue of fact. Thus Allis-Chalmers has merely suggested a different construction of the contract; it has not, however, isolated a material *factual* dispute. Allis-Chalmers further argues that the record does not establish that each class member knew of the offer, relied on it, acted with intent to accept it, and accepted it according to its terms. In accordance with our discussion above, we conclude that none of these objections raise material issues of fact. We hold that on this record the trial court was entitled to conclude as a matter of law that a binding contract was formed under Wisconsin law as to the members of the plaintiff class.

Allis-Chalmers maintains that, even if there are no issues of material fact, summary judgment was inappropriate because the law applied was not clearly established in Wisconsin. In *Ramsden v. Hawkinson Gas Service Co.,* 63 Wis.2d 455, 459, 217 N.W.2d 322 (1974), this court, reviewing an order denying summary judgment, stated that summary judgment should not be granted unless the material facts are undisputed, the inferences plain, and the law clear. Where the applicable law is unclear, the trial court might soundly exercise its discretion by not invoking it until the record is fully developed. The record before the trial court was very complete. It contained all the facts necessary to establish a contract under Wisconsin law between Allis-Chalmers and the members of the plaintiff class. Only a question of law remained: the effect of the reserved right to amend or terminate as to those employees fulfilling their service requirements and retiring. We do not read the *Ramsden*

*Case* as requiring that the trial court abstain from applying the law where its factual predicate is completely established.

The question thus presented by the cross-motions for summary judgment is whether Allis-Chalmers may invoke its reserved right to amend the terms of its group life insurance program to require the plaintiffs to contribute to the cost of the policy. The defendant cites *Thornbery v. MGS Co., Inc., supra,* and *Rosploch v. Alumatic Corp. of America, supra,* as two recent cases lending support for the proposition that a reserved right to amend is a condition of the contract and may be invoked by an employer to amend the terms of a plan as it applies to an employee who provided services and retired under the plan. We conclude the circumstances of those cases are substantially different from the instant case and cannot be considered as authority for support of the defendant's position that a reserved right to amend should always prevail.

*Thornbery* was a class action on behalf of former salaried employees of Baso, Inc., to compel MGS Co., Baso's successor, to fully fund a past service retirement plan before the plan was terminated and the corporation dissolved. The plan at issue contained disclaimer provisions which provided the pension plan could be terminated at any time without liability for any unfunded portions on Baso, MGS Company, or its officers and directors. When MGS terminated the plan and began to dissolve the company, the plaintiffs sued to require MGS to fully fund the plan. The trial court dismissed the complaint on the ground that the plan was a gratuity not enforceable as a contract for lack of consideration. This court affirmed the judgment, noting that the disclaimer provisions in both Baso and MGS plans clearly provided that the plans might be terminated at any time without

liability for the unfunded portion attaching to Baso, MGS, or the officers or directors.

The *Thornbery Case* is distinguishable from the instant one in two important respects. In *Thornbery* the plan promised benefits payable out of a specified fund, which is substantially different from a plan creating a general unfunded obligation on the company. More important, all plaintiffs who were retired or eligible for retirement received full pensions. The reserved right to terminate the plan did not affect those who fully performed their obligations to provide services to the company. Thus the court in *Thornbery* was not presented with the issue raised here concerning the effect of the reservation as to retired employees.

In *Rosploch v. Alumatic Corp. of America, supra,* the company amended its profit sharing plan by adding an additional ground for forfeiture, effectively divesting an employee of his vested interest under the plan. Article X of the plan specifically prohibited an amendment which deprived an employee of his or her vested interest. This court affirmed a judgment entered in Rosploch's favor, stating that the risk of forfeiture of his interest at the time it vested was part of the contract created by his performance. We continued:

"But to hold that Alumatic could impose the no-competition amendment as an additional condition upon Rosploch's contractual right, after he had earned his account by virtue of his performance, is tantamount to saying that benefits under the plan were merely a gratuity. That view of pension and profit-sharing plans has long been inconsistent with Wisconsin law—at least since *Zwolanek v. Baker, supra,* decided in 1912. The limitation incorporated in Article X as to the company's power of amendment, construed as it should be in favor of the employee, is ample evidence of an intent to preclude such a result." 77 Wis.2d at 87–88.

The instant case does not involve a narrowly drawn forfeiture provision but deals with a sweeping reserved

power of amendment exercisable at the exclusive option of the company. To permit such a power of amendment to be exercised by an employer to effect a unilateral change in a retirement plan as to employees who have fully performed their services and whose rights under the plan thus became vested would truly be to render the plan a mere gratuity.

We adopt the rationale of *Cantor v. Berkshire Life Insurance Co.,* 171 Ohio St. 405, 171 N.E.2d 518 (1960), relied on by the trial court, which involved a retirement program offering deferred compensation for continued service. In that case the plaintiff had fulfilled all the conditions of his employment contract and had retired. Shortly thereafter his employer attempted to cancel the plan pursuant to a reserved right to terminate the contract. The court held that such cancellation was ineffective because the employee's rights under the plan became vested upon the employee's retirement after fulfilling the conditions precedent to participation in the plan and could not thereafter become unilaterally divested. The court set forth the economic underpinnings of its holding as follows:

"A retirement program has become a basic part of an employee's remuneration even as his wages are a part thereof, and a consideration flows to the employer as well as to the employee through such a program.

"Clearly, under our present economic system, an employer cannot offer a retirement system as an inducement to employment and, after an employee has accepted employment under such circumstances, withdraw or terminate the program after an employee has complied with all the conditions entitling him to retirement rights thereunder." 171 N.E.2d at 522.

We note that in *Sheehy v. Seilon, Inc.,* 10 Ohio St.2d 242, 227 N.E.2d 229 (1967), the court reaffirmed its reasoning in *Cantor* in the context of a class suit to compel a company to contribute to group life insurance policies after retirement of the employees.

The defendant would have this court follow the approach of the Third Circuit Court of Appeals in *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527, 532–33 (3d Cir. 1970). Applying New York law, the court gave effect to a termination clause in a pension plan as applied to retirees. It concluded that by virtue of the termination clause plaintiffs had simply a "conditional contract right" under the plan. Of course, the employer is obliged to exercise the power of amendment in good faith. The plaintiffs maintain that the *Boase* decision rests on New York law following the "gratuity theory" of retirement benefits long disavowed in Wisconsin law. A careful reading of *Boase*, however, discloses that the court applied traditional principles of contract law to construe the plan. However, retirement benefit plans must be considered in light of modern economic conditions in which such plans form a real inducement for services and become important economic considerations for persons on fixed incomes. Thus we agree with the trial court's conclusion that it is the better law, consistent with sound public policy, that under these facts the group life insurance plan may not be unilaterally modified by Allis-Chalmers to the detriment of its retired employees.

*By the Court.*—Judgment affirmed.