SISTERS OF ST. MARY on behalf of all others simi-
larly situated, Plaintiff-Appellant, †

v.

AAER SPRAYED INSULATION, Armstrong Con-
tracting & Supply Corp., now AC & S, Inc., Armstrong
World Industries, Inc., formerly Armstrong Cork, a
Pennsylvania Corp., Asbestos Corp., Ltd, Bell Asbestos
Mines, Ltd, Carey-Canada, Inc., Celotex Corporation,
Columbia Accoustics & Fireproofing Co., Combustion
Engineering, Inc. a Delaware Corp., Eagle-Picher
Industries, Inc. an Ohio Corporation, Fibreboard
Corporation, Successor in interest of Pabco, a Delaware
Corp., Flintkote Company, a Massachusetts Corp.,
GAF Corporation, a Delaware Corp., H.K. Porter Co., a
Delaware Corp., J.W. Roberts, Ltd, Keene Building
Products Corporation, a Delaware Corporation, Keene
Corporation, a New York Corporation, Lake Asbestos
of Quebec, a/k/a/ Lac D'Amiante du Quebec, National
Gypsum Company, a Delaware Corporation, Nicolet,
Inc., a Delaware Corp., Successor to Keasbey & Mat-
tison Co., Owens-Corning Fiberglas Corp., a Delaware
Corp., Owens-Illinois, Inc. an Ohio Corp., Pfizer, Inc.,
a Delaware Corp., Pittsburg Corning Corporation, a
Pennsylvania Corp., Raymark Industries, formerly
Raybestos-Manhattan, Inc., a Connecticut Corp.,
Southern Textile Corporation, a Delaware Corp.,
Turner & Newall, Ltd, Turner Asbestos Fibres, Inc.,
U.S. Gypsum Co., a Delaware Corp., U.S. Mineral
Products, a New Jersey Corp., W.R. Grace Co., a Con-

† Petition to review denied.

708

necticut Corp. and others, presently unknown,
Defendants-Respondents.

Court of Appeals

*No. 88-0513. Argued April 13, 1989.—Decided July 26, 1989.*

(Also reported in 445 N.W.2d 723.)

For the plaintiff-appellant there were briefs by *Richard L. Cates* and *James A. Olson* and *Lawton & Cates, S.C.,* of Madison, and oral argument by *James A. Olson.*

For the defendant-respondent, Owens-Illinois, Inc., there were briefs by *Robert H. Riley* and *Catherine Masters Epstein* of *Schiff, Hardin & Waite,* of Chicago, Illinois.

For the defendant-respondent, GAF Corporation, there were briefs by *James C. Murray, Jr., Patrick J. Lamb* and *Kirk T. Hartley* of *Katten, Muchin & Zavis,* of Chicago, Illinois, and by *Harvey B. Stover, Jr.* and

*James E. Culhane,* of *Davis & Kuelthau, S.C.,* of Milwaukee.

For the defendants-respondents, The Celotex Corporation and Carey Canada, Inc., there were briefs by *Thomas M. Pyper* of *Whyte & Hirschboeck, S.C.,* of Madison, and by *Ralph W. Brenner* and *Larry R. Barron* of *Montgomery, McCracken, Walker & Rhoads,* of Philadelphia, Pennsylvania.

For the defendant-respondent, Fibreboard Corporation, there were briefs by *Douglas H. Starck* of *Riordan, Crivello, Carlson & Mentowski,* of Milwaukee.

For the defendant-respondent, Eagle-Picher Industries, Inc., there were briefs by *Jeffrey A. Schmeckpeper* of *Kasdorf, Dall, Lewis & Swietlik, S.C.,* of Milwaukee.

For the defendant-respondent, Pfizer Inc., there were briefs by *Steven Kirschner* of *Ross & Stevens, S.C.,* of Madison.

For the defendants-respondents, Columbia Acoustics and Fireproofing Co. and U.S. Mineral Products, there were briefs by *Joan Ravelli-Miller* of *Nash, Spindler, Dean & Grimstad,* of Manitowoc.

For the defendant-respondent, Flintkote Co., there were briefs by *Richard J. Delacenserie* of *Boardman, Suhr, Curry & Field,* of Madison.

For the defendant-respondent, Pittsburg-Corning Corporation, there were briefs by *Rex Capwell* of *Capwell-Berthelson,* of Racine.

For the defendant-respondent, Combustion Engineering, Inc., there were briefs by *Robert E. Hankel* of *Schoone, McManus, Hankel, Ware & Fortune,* of Racine.

For the defendant-respondent, Raymark Industries, there were briefs by *James B. Brennan,* of *Brennan & Collins,* of Milwaukee.

For the defendant-respondent, Armstrong World Industries, there were briefs by *William Corrigan* of *Menn, Nelson & Sharatt,* of Appleton.

For the defendant-respondent, Owens-Corning Fiberglas Corp., there were briefs by *Steven W. Celba* of *Borgelt, Powell, Peterson & Frauen,* of Milwaukee.

For the defendants-respondents, H.K. Porter Co. and Southern Textiles, there were briefs by *James Samuelson* of *Godfrey, Trump & Hayes,* of Milwaukee, and oral argument by *Thomas M. Pyper* of *Whyte & Hirschboeck, S.C.,* of Madison.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J.   The Sisters of St. Mary (plaintiffs), on behalf of all others similarly situated, appeal from an order denying their motion requesting class certification in their suit against AAER Sprayed Insulation, et al. (defendants). The issue is whether the trial court abused its discretion in denying the class certification motion. Because we conclude it did not, we affirm.

## FACTS

Plaintiffs operate hospitals in Wisconsin and in three other states. Defendants are members of the asbestos industry. Many of plaintiffs' hospital buildings contain asbestos containing materials (ACM).

Asbestos is a carcinogen. National Emissions Standards For Hazardous Air Pollutants (Asbestos), 40 C.F.R. sec. 61 *et seq.* (1988) ("NESHAPS"), require building owners to undertake special precautions to prevent the release of asbestos fibers when ACM is disturbed. These steps include: sealing off the area involved; establishing negative air pressure in the work site; wetting down the ACM; protecting workmen with special

respirators and disposable clothing; frequent air monitoring; and stringent disposal requirements. Plaintiffs seek to recover the cost of these "abatement"[1] procedures from defendants as their principal item of damages.

Plaintiffs moved for class certification under sec. 803.08, Stats.,[2] for all U.S. hospitals seeking to recover the costs of ACM abatement in their buildings from defendants. The trial court denied plaintiffs' motion. Plaintiffs appeal.

## STANDARD OF REVIEW

We review a trial court's decision denying class certification for an abuse of discretion. *Schlosser v. Allis-Chalmers Corp.,* 86 Wis. 2d 226, 233, 271 N.W.2d 879, 883 (1978). A trial court properly exercises its discretion if it examines the relevant facts, applies a proper legal standard and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *In re Paternity of B.W.S.,* 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986).

## DISCUSSION

Under sec. 803.08, Stats., there are three prerequisites for bringing a class action: there must be a common

---

[1] Abatement activities range from keeping track of ACM to its total removal.

[2] Section 803.08, Stats., provides:

> When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

or general interest shared by all class members; the named parties must fairly represent the interest involved so that the issue may be fairly tried; and it must be impracticable to bring all of the interested parties before the court. *Mercury Records v. Economic Consultants,* 91 Wis. 2d 482, 490, 283 N.W.2d 613, 617 (Ct. App. 1979). It is in the public interest to permit class actions when these three criteria are met. *Id.*

> " '[T]he court must determine whether the advantages of disposing of the entire controversy in one proceeding are outweighed by the difficulties of combining divergent issues and persons. It is a question of the balance of convenience whether the court will settle all the issues in one suit; or will settle only the common question in one suit and then allow the independent questions to proceed in separate equity suits; or not settle the controversy at all in a single suit.' "

*Goebel v. First Fed. Savings & Loan Asso.,* 83 Wis. 2d 668, 681-82, 266 N.W.2d 352, 359 (1978) (quoting *Schlosser v. Allis-Chalmers Corp.,* 65 Wis. 2d 153, 172, 222 N.W.2d 156, 166 (1974)).

As the trial court observed, the concerns noted in *Schlosser* focus on the basic question: is the proposed class action manageable? This is the same question federal courts are faced with in deciding class certification questions under Fed. R. Civ. P. 23(b)(3):

> It is obvious that the district court's concern—a justifiable and serious one—is with manageability. This is a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals. Consequently, it is an area in which the trial court must of necessity be granted a wide range of discretion.

*Link v. Mercedes-Benz of N. Am., Inc.,* 550 F.2d 860, 864 (3d Cir.), *cert. denied,* 431 U.S. 933 (1977).

With these precepts in mind, we evaluate the trial court's decision to deny plaintiffs' class certification.

The trial court concluded that plaintiffs had met the three criteria noted above, and that ruling is unchallenged on appeal. However, the trial court denied class certification because it concluded that this case would be unmanageable as a class action. Plaintiffs claim the trial court abused its discretion by misweighing the benefits and burdens of a class action.

Plaintiffs assert that many of the burdens the trial court identified are not "burdens inherent in a class certification as contemplated by" *Schlosser,* 86 Wis. 2d at 233–34, 271 N.W.2d at 883. Therefore, plaintiffs claim that the trial court should not have weighed these burdens in determining the manageability of the proposed class action. Although plaintiffs do not expressly assert that "inherent in" is synonymous with "unique to," this is what plaintiffs imply. In other words, plaintiffs seem to argue that, if a burden may arise in a non-class action as well as a class action, the trial court may not weigh that burden in deciding whether to certify a class. We disagree.

> In essence, the determination whether a case should proceed as a class action turns on the question whether the benefits to be derived from such a procedure outweigh the inherent difficulties. *In other words, a court must determine whether the issues common to the named plaintiffs and the class members are outweighed by the issues particular to the individual class members.* This determination rests in the sound discretion of the court.

*Goebel,* 83 Wis. 2d at 684, 266 N.W.2d at 360 (citations omitted) (emphasis added). Although the supreme court decided *Schlosser* after *Goebel,* there is no indication that *Schlosser* worked a substantive change in this weighing process.

Plaintiffs take up separately each problem the trial court noted and claim the problem was either not "inherent" in a class action or that it was not as bad as the trial court thought. We have already dealt with plaintiffs' argument related to their misplaced reliance on the meaning of "inherent." Plaintiffs' emphasis on second-guessing the trial court's evaluation of each separate burden is also misplaced. While each problem, considered separately, may not present an overwhelming burden to class certification, that is not the issue. The question the trial court must, and did, resolve is whether, considering the effect of all of the burdens together, which includes any synergistic effect those burdens may have, the burdens of a class action outweigh the benefits.

Plaintiffs first contest the trial court's conclusion that a jury in a class proceeding would need to make findings for hundreds of defendants' products. Although the trial court acknowledged that ACM fell into "approximately nine functional categories, *e.g.,* pipe coverings, acoustical plasters, ceiling tiles, etc.," the trial court noted that in each of these broad generic categories, products varied "in the amount and type of asbestos used, the degree of friability, the years in which the particular product was marketed, whether any warnings accompanied the product, and if so, the nature of the warnings." The trial court concluded that it could not see why "evidence of these differences would not be admitted at trial thereby requiring jury verdict questions as to at least each product where a material difference

has been shown." Plaintiffs claim this conclusion "is dubious, and without support." This is not so.

Plaintiffs argue that all ACM at issue in this case contains more than one percent asbestos and that "[u]nder NESHAPS, if ACM contains 1% or more asbestos, a hospital must take special precautions during renovation and razing and, consequently, will incur damages." Plaintiffs conclude that there is no need to litigate each product separately. However, plaintiffs mischaracterize NESHAPS requirements. Besides applying only to ACM with over a one percent asbestos content, NESHAPS applies only where the ACM is "friable," that is, capable of being crumbled by hand pressure, and where the amount of ACM removed in a particular renovation project exceeds 160 square or 260 linear feet. 40 C.F.R. secs. 61.141, 61.145(d). In the trial court, plaintiffs admitted that some ACM is not friable and that some removal projects did not meet the trigger amount. The trial court's conclusion that a jury would need to determine these facts separately for each product and removal project is reasonable. Plaintiffs demonstrate no abuse of discretion here.

Plaintiffs also claim that the trial court erred by concluding that it would need to give special jury instructions on admissibility. However, the very issue of which jury instructions to give is within the trial court's discretion. *State v. Kemp,* 106 Wis. 2d 697, 705–06, 318 N.W.2d 13, 18 (1982). Also, if defendants requested limiting instructions during the presentation of evidence pursuant to sec. 901.06, Stats., it is within the court's discretion whether to give them. *Seraphine v. Hardiman,* 44 Wis. 2d 60, 67, 170 N.W.2d 739, 743 (1969); *State v. Wollman,* 86 Wis. 2d 459, 465–66, 273 N.W.2d 225, 228 (1979). If the trial court could foresee

717

the possibility of giving limiting instructions during trial, we fail to see how it could have abused its discretion by taking that factor into consideration when weighing the benefits and burdens of class certification. Plaintiffs show no abuse of discretion here.

Plaintiffs acknowledge that the trial court would need to apply several bodies of law in a class action. However, plaintiffs claim that the use of subclasses, *i.e.,* groupings of states with similar legal theories, will lessen this burden. Plaintiffs note that, although the trial court agreed that subclasses were possible, it apparently "disregarded this conclusion in determining that the need to learn many states' laws was a burden weighing against class certification."

Although plaintiffs seem to suggest that the trial court was inconsistent on this issue, we see no inconsistency. Even with the plaintiffs' proposed "subclasses," there were still several bodies of law unfamiliar to the trial court. The court concluded that this factor increased the possibility of erroneous evidentiary rulings. The court reasoned that, if such errors occurred, a retrial may have to be held. The trial court's concerns on these matters are not without reason. Plaintiffs show no abuse of discretion here.

Plaintiffs next claim the trial court erred by concluding that it would take months or perhaps years to present the evidence in this case. The court concluded that "given the number of defendants, each represented by separate counsel and each with the right of (and interest in because of separate product considerations) cross-examination," trial time would necessarily be much longer than usual. Although plaintiffs claim that similar "asbestos-in-building" cases have been tried in one or two weeks, plaintiffs point to nothing of record to support this claim. On the contrary, plaintiffs conceded

at oral argument that they knew that they were "going to have a long discovery, a long trial in the case in chief." They also conceded that "it may well be during the course of the next year or two or three years or however long it takes" before individual damage claims would be ready for determination. If plaintiffs presented such an argument to the trial court, we are unable to understand how plaintiffs can fault the trial court for adopting that position.

Plaintiffs next claim the trial court abused its discretion because it placed too much emphasis on the possibility of separate trials on contributory negligence. Plaintiffs claim that it is unrealistic to conclude that many such trials would be held. The trial court noted that if a jury verdict "were favorable to the plaintiffs as to some or all of the products under some or all of the variations of substantive law, the surviving claims of class members would be subject to further litigation over affirmative defenses and damages."

The trial court discussed in detail one of the affirmative defenses, contributory negligence, but noted that defendants had raised over forty affirmative defenses. Plaintiffs do not address any of the other possible affirmative defenses, and they focus only on the trial court's discussion of contributory negligence. They claim that contributory negligence is not a serious problem because in most cases it will not be an issue. Plaintiffs claim that, in most cases, the court will be able to find as a matter of law that a hospital was not contributorily negligent in a summary judgment proceeding. In the other cases, plaintiffs claim that only a few trials will be litigated and that experience from those few will cause the parties to negotiate settlements in the rest. Plaintiffs also claim that defendants have cited no evidence of any hospital's contributory negligence even though they

"thoroughly examined the named plaintiffs' records and deposed their personnel in search of evidence of contributory negligence."

The trial court rejected each of plaintiffs' arguments. The court noted that contributory negligence had not been briefed or subject to any discovery and that the general themes which had emerged on contributory negligence so far in the case pointed to "at least arguable jury questions." It also noted that it was undisputed that some hospitals have improperly maintained the ACM in them. Further, the court pointed out that each hospital's subjective knowledge of asbestos dangers could not be litigated in a class trial and that a separate proceeding would need to determine that issue.

Plaintiffs claim that *Schlosser*, 86 Wis. 2d 226, 271 N.W.2d 879, supports their view that the trial court can allow the parties to litigate the common issues in a common proceeding and to leave the individual issues to be litigated in individual proceedings. We agree that *Schlosser* noted that damages in that case were to be determined in a subsequent proceeding. 86 Wis. 2d at 243, 271 N.W.2d at 887. However, we must read this observation in light of the facts of that case. In the supreme court's earlier decision in that case, *Schlosser*, 65 Wis. 2d 153, 172, 222 N.W.2d 156, 166 (1974), the court noted that the damages question "would not seem overly complicated and could undoubtedly be resolved by reference to insurance records in defendant's possession." Plaintiffs fail in their attempt to equate their case with that of the plaintiffs in *Schlosser*.

> [W]here the fact of injury and damage breaks down in what may be characterized as "virtually a mechanical task," "capable of mathematical or formula calculation," the existence of individualized claims for damages seems to offer no barrier to class certification on

grounds of manageability. On the other hand, where the issue of damages and impact does not lend itself to such a mechanical calculation, but requires "separate 'mini-trial[s]' " of an overwhelming large number of individual claims, courts have found that the "staggering problems of logistics" thus created "make the damage aspect of [the] case predominate," and render the case unmanageable as a class action.

*Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied*, 435 U.S. 968 (1978) (footnotes omitted). The trial court's conclusion that the present case falls into the latter category rather than the former is not unreasonable.

The trial court also disagreed with plaintiffs' argument regarding settlement possibilities: "In short, the prospect for peaceful resolution of this issue is not so great that this court can dismiss from consideration the very real costs of having class trial evidence repeated in a number of individual mini-trials." We cannot fault the trial court's evaluation of the settlement prospects in this case. Because the trial court's determination is one a reasonable judge could reach, we leave it undisturbed.

Plaintiffs also claim that the trial court "abused its discretion by holding that the possibility that not all eligible class members will participate in the class is a *burden* which weighs against certification. The class procedure will provide benefits for however many hospitals do participate." Originally, plaintiffs requested class certification because it would save money by substituting one class action for 6,000 individual ones. As plaintiffs became more knowledgeable of the problems involved in their proposed class proceeding, they conceded that probably less than the originally proposed 6,000 class members would participate in it.

Surely a class action that substitutes one class trial for 6,000 individual trials is more beneficial than a class action that substitutes one class trial for 1,000 or 100 individual trials. We fail to see how a trial court abuses its discretion if it takes this diminishing ratio into consideration. Certainly the burdens of a class action are more justified in the former instance than in the latter. We conclude that the trial court properly considered this factor in deciding whether the burdens of the class action outweighed the benefits.

Plaintiffs next argue that failure to certify a class will effectively deny many hospitals any remedy at all. Plaintiffs claim that asbestos litigation is not economically feasible for hospitals having claims of only $10,000 to $20,000. However, plaintiffs admit they were unable to identify a single asbestos-in-building case where the recovery did not exceed the litigation costs. Further, the cases plaintiffs cite for support involved claims of $70, $13.61 and $161.[3] We do not agree that plaintiffs have clearly shown an abuse of discretion here. *Colby v. Colby,* 102 Wis. 2d 198, 207–08, 306 N.W.2d 57, 62 (1981).

Plaintiffs lastly argue that a class proceeding would facilitate product identification. However, plaintiffs' position regarding product identification is much more optimistic on appeal than it was in the trial court, as the argument of plaintiffs' counsel demonstrates:

> As I look at this, I would very much like to be able to identify products by chemical analysis because then I'd have the great argument for class certification. Then it makes sense to set up this facil-

---

[3] *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119, 120 (2d Cir. 1966), *cert. denied,* 386 U.S. 1035 (1967); *Kelly v. County of Allegheny,* 515 A.2d 48, 49 (Pa. Super. Ct. 1986), *aff'd,* 546 A.2d 608 (Pa. 1988); *Ojalvo v. Board of Trustees of Ohio State,* 466 N.E.2d 875, 879 n. 3 (Ohio 1984).

ity to get all the formulas and to have one laboratory or a couple laboratories uniformly examine the samples as they come in and pick out which particular company it is.

It's not going to work that way, but we could still do the best we can. We could still have this facility set up, we could have it set up on a one data base and we could attempt to see how well we could do as far as product identification is concerned.

We're going to give [product identification] the best shot. If we can meet our burden, fine. But the fact of the matter is we cannot meet our burden in most of the cases . . ..

The trial court considered plaintiffs' proposal, but concluded that the class proceeding "could not take from the defendants their rights to jury trials on the principal issues of each hospital's claim—damages, affirmative defenses and product identification under the laws of the hospital's home jurisdiction." We conclude that the trial court did not abuse its discretion here because it considered the relevant facts and law and reached a conclusion that a reasonable judge could reach.

██

Because we conclude the trial court did not abuse its discretion in denying class certification, we affirm.[4]

*By the Court.*—Order affirmed.

[4]Plaintiffs raise a new argument in their reply brief related to a possible modification of *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), by *Sun Oil Co. v. Wortman,* 108 S. Ct. 2117 (1988). Plaintiffs failed to raise their argument related to *Shutts* on appeal, although they presented it to the trial court. We granted defendant's motion to file a sur-reply brief to rebut plaintiffs' *Wortman* argument. Plaintiffs claim they could not address *Wortman* in their initial brief because the case "was first pub-

lished on July 15, 1988, a short time before appellants' first brief was filed and [they] were unaware of it at that time." *Wortman* was filed June 15, 1988, not July 15, as plaintiffs claim. Plaintiffs filed their appellants' brief on August 1, 1988. We conclude that plaintiff could have raised the issue in their first brief. Normally, we will not review arguments raised in a reply brief. *In Matter of Estate of Bilsie,* 100 Wis. 2d 342, 346 n. 2, 302 N.W.2d 508, 512 n. 2 (Ct. App. 1981). We see no reason to make an exception here.