**CENTRAL WESLEYAN COLLEGE,**
**Plaintiff–Appellee,**

v.

**W.R. GRACE & CO.; United States Gypsum Company; AC & S, Incorporated; A.P. Green Refractories Company; Armstrong World Industries, Incorporated; Fibreboard Corporation; Flintkote Company; GAF Corporation; General Refractories Company; Grant Wilson Inc.; Babcock & Wilcox Co.; Basic, Incorporated; California Products Corporation; Crown Cork & Seal Company, Incorporated; Dana Corporation; Dodson Manufacturing Company; Keene Corporation; Lac D'Amainte Du Que-**

178

bec, Ltee; Ohio Lime Company; Owens–Corning Fiberglas Corporation; Owens–Illinois, Incorporated; Pfizer, Incorporated; Rock Wool Manufacturing Company, Incorporated; Uniroyal Incorporated; United States Mineral Products Company; Vimasco Corporation; Pittsburgh Corning Corporation; Turner & Newall, Ltd.; Cassiar Mining Corporation, Defendants–Appellants,

and

National Gypsum Company; Acoustics, Incorporated; Amchem Products, Incorporated; American Asbestos Products, Incorporated; American Energy Products, Incorporated; Asbestos Corporation, Ltd.; Asbestos Corporation; Asbestos Fibers, Incorporated; Asbestospray Corporation; Eagle Picher Industries; Empire Ace Insulation Manufacturing Corporation; Empire Asbestos Products, Incorporated; Foster Wheeler Corporation; Forty–Eight Insulations, Inc.; Garlock, Inc.; Georgia–Pacific Corporation; Grefco, Incorporated; H & A Construction Corporation; Hamilton Materials, Incorporated; H.K. Porter Company, Incorporated; Highland Stucco & Lime Products, Incorporated; Hollywood Stucco Products, Incorporated; Huxley Development Corporation; IPA Systems, Incorporated; J.W. Roberts, Ltd.; John Crane–Houdaille, Incorporated; Asten Group, Incorporated; Atlas Turner, Inc.; Carey Canada, Inc.; The Celotex Corporation; Certainteed Corporation; Charter Consolidated Investments; Charter Industries; Chemrock Corporation; Combustion Engineering, Incorporated; Kaiser Refractories; Kaiser Aluminum and Chemical Corporation; Kaiser Gypsum Company, Incorporated; Nicolet, Inc.; Quigley Company, Inc.; Raymark Industries, Incorporated; Ryder Industries, Incorporated; Sealtite Insulation Manufacturing, Incorporated; Special Asbestos Company, Incorporated; Sprayon Insulation & Acoustic, Incorporated; Sprayed Insulation Corporation; Sprayon Research Corporation; Starr–Davis Company, Incorporated; Standard Insulations, Incorporated; Standard Asbestos Manufacturing and Insulating Company; Vermont Asbestos Group; Western Mineral Products Company, Incorporated; Asbestos Product Manufacturing; Southern Textile Corporation, a Delaware corporation; C.E. Thurston & Sons; Charter Consolidated, Ltd.; Atlas Asbestos Corporation, Ltd.; Cape Industries, Ltd.; TAF International, Ltd.; Turner Asbestos Fibres, Ltd.; Charter Consolidated Services; California Products International, Incorporated; Cape Asbestos Fibres, Ltd.; Bell Asbestos Mines, Ltd., Defendants.

CENTRAL WESLEYAN COLLEGE,
Plaintiff–Appellee,

v.

KAISER GYPSUM COMPANY,
INCORPORATED, Defendant–Appellant,

and

W.R. Grace & Co.; United States Gypsum Company; AC & S, Incorporated; A.P. Green Refractories Company; Armstrong World Industries, Incorporated; Fibreboard Corporation; Flintkote Company; GAF Corporation; General Refractories Company; Grant Wilson, Inc.; Babcock & Wilcox Co.; Basic, Incorporated; California Products Corporation; Crown Cork & Seal Company, Incorporated; Dana Corporation; Dodson Manufacturing Company; Keene Corporation; Lac D'Amainte Du Quebec, Ltee; Ohio Lime Company; Owens–Corning Fiberglas Corporation; Owens–Illinois, Incorporated; Pfizer, Incorporated; Rock Wool Manufacturing Company, Incorporated; Uniroyal Incorporated; United States Mineral Products Company; Vimasco Corporation; Pittsburgh Corning Corporation; Turner & Newall, Ltd.; Cassiar Mining Corporation; National Gypsum Company; Acoustics, Incorporated; Amchem Products, Incorporated; American Asbestos Products, Incorporated; American Energy Products, Incorporated; Asbestos Corporation, Ltd.; Asbestos Corporation; Asbestos Fibers, Incorporated; Asbestospray Corporation; Eagle Picher Industries; Empire Ace Insulation Manufacturing Corporation; Empire Asbestos Products, Incorporated; Foster Wheeler Corporation; Forty–Eight In-

sulations, Inc.; Garlock, Inc.; Georgia–Pacific Corporation; Grefco, Incorporated; H & A Construction Corporation; Hamilton Materials, Incorporated; H.K. Porter Company, Incorporated; Highland Stucco & Lime Products, Incorporated; Hollywood Stucco Products, Incorporated; Huxley Development Corporation; IPA Systems, Incorporated; J.W. Roberts, Ltd.; John Crane–Houdaille, Incorporated; Asten Group, Incorporated; Atlas Turner, Inc.; Carey Canada, Inc.; The Celotex Corporation; Certainteed Corporation; Charter Consolidated Investments; Charter Industries; Chemrock Corporation; Combustion Engineering, Incorporated; Kaiser Refractories; Kaiser Aluminum and Chemical Corporation; Kaiser Gypsum Company, Incorporated; Nicolet, Inc.; Quigley Company, Inc.; Raymark Industries, Incorporated; Ryder Industries, Incorporated; Sealtite Insulation Manufacturing, Incorporated; Special Asbestos Company, Incorporated; Sprayon Insulation & Acoustic, Incorporated; Sprayed Insulation Corporation; Spray-on Research Corporation; Starr–Davis Company, Incorporated; Standard Insulations, Incorporated; Standard Asbestos Manufacturing and Insulating Company; Vermont Asbestos Group; Western Mineral Products Company, Incorporated; Asbestos Product Manufacturing; Southern Textile Corporation, a Delaware corporation; C.E. Thurston & Sons; Charter Consolidated, Ltd.; Atlas Asbestos Corporation, Ltd.; Cape Industries, Ltd.; TAF International, Ltd.; Turner Asbestos Fibres, Ltd.; Charter Consolidated Services; California Products International, Incorporated; Cape Asbestos Fibres, Ltd.; Bell Asbestos Mines, Ltd., Defendants.

Nos. 92–2268, 92–2269.

United States Court of Appeals,
Fourth Circuit.

Argued April 1, 1993.

Decided Sept. 24, 1993.

Thomas W. Kirby, Wiley, Rein & Fielding, Washington, DC, argued (Joseph B.G. Fay, Morgan, Lewis & Bockius, Philadelphia, PA, for appellant U.S. Gypsum; Michael T. Cole, Wise & Cole, P.A., Charleston, SC, for appellant Pfizer; Allen S. Joslyn, P. Kevin Castel, Cahill, Gordon & Reindel, New York City, for appellant W.R. Grace & Co., on brief), for appellants.

Arthur R. Miller, Harvard Law School, Cambridge, MA, argued (Daniel A. Speights, Speights & Runyon, Hampton, SC; Edward J. Westbrook, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, on brief), for appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case presents the question of whether conditional class certification was appropriate in a suit brought against a group of asbestos producers on behalf of those colleges and universities with friable asbestos in their buildings. The district court granted plaintiff's motion for certification on the condition that discovery be primarily limited to eight "common issues," which the court deemed to predominate at this stage of the litigation. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 642–43 (D.S.C.1992). Although manageability problems present concerns in a lawsuit of this magnitude, the class mechanism may advance this action and reduce the need for repetitive litigation in this area. The district court made detailed findings to support its holding, and we can-

not say that the court abused its discretion in conditionally certifying the class. Accordingly, we affirm the district court's judgment.

## I.

Plaintiff Central Wesleyan College is a small college in Central, South Carolina. As many as eight of the buildings on its eight or nine building campus contain asbestos products, including pipe insulation, hot water tank insulation, elbow insulation, spray insulation, and spray ceiling material. In July 1987, Central Wesleyan filed this lawsuit on behalf of itself and a class of all public or private colleges and universities in the United States that have suffered property damage due to the presence of friable asbestos in any of their facilities. "Friable" asbestos refers to asbestos products that "when dry, can be crumbled, pulverized, or reduced to powder by hand pressure." 40 C.F.R. § 61.141. The district court estimated that some sixteen to thirty-five percent of America's colleges and universities were potential class members. The complaint seeks compensation for the costs of controlling and eventually removing the asbestos as required by federal law. *See* 40 C.F.R. §§ 61.12(c), 61.-145(c), 61.150. The complaint also seeks punitive damages.

## A.

It is important at the outset to review the history of asbestos litigation as a background to the present lawsuit. Beginning in the late 1960s, numerous personal injury cases were filed after studies linked asbestos particle exposure to asbestosis and other diseases. *See Borel v. Fibreboard Paper Prod. Corp.,* 493 F.2d 1076, 1083–85 (5th Cir.1973). Courts rejected early attempts to bring asbestos personal injury class actions, fearing that such cases involved too many individual issues. *See, e.g., Yandle v. PPG Indus., Inc.,* 65 F.R.D. 566, 570–71 (E.D.Tex.1974). As the stream of cases became a torrent, however, the courts began to reconsider whether certain issues surrounding asbestos and its known dangers were essentially the same in most cases. These issues included (1) the general health hazards of asbestos; (2) when defendants knew or had reason to know of these hazards; (3) whether defendants failed to test their products or warn the public about them; (4) whether the asbestos industry engaged in any concerted action or conspiracy; and (5) whether defendants should be liable for punitive damages. As the volume of litigation rose, the courts became more receptive to both consolidation of asbestos personal injury cases and limited class certification for resolution of these common questions. *Compare In re Asbestos Prod.Liab.Litig. (No. VI),* 771 F.Supp. 415, 418 (J.P.M.L.1991) (consolidating 26,639 asbestos personal injury actions in the Eastern District of Pennsylvania because the magnitude of the litigation "threatens the administration of justice" and "requires a new, streamlined approach") *with In re Asbestos and Asbestos Insulation Material Prod.Liab.Litig.,* 431 F.Supp. 906, 910 (J.P.M.L.1977) (not consolidating 103 actions because of the belief that "factual questions unique to each action" made transfer unwarranted); *see also Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468 (5th Cir.1986) (affirming certification of a limited issues personal injury class); *Cimino v. Raymark Indus., Inc.,* 751 F.Supp. 649 (E.D.Tex.1990) (resolving damages issues in personal injury class action).

At the state level, large consolidations of personal injury cases have occurred. A consolidated trial of over 8,500 plaintiffs' claims before a state judge in Baltimore, Maryland has proceeded through four phases. *In re Baltimore City Asbestos Litig.,* No. 89236704 (Md.Cir.Ct.); *see Asbestos Litig.Rep.* at 26571–72 (Dec. 18, 1992). The first phase dealt with liability issues common to all the claims and resulted in verdicts against six defendants. *Asbestos Litig.Rep.* at 26572. Mini-trials on causation and damages continue, *id.,* and a number of other defendants have settled. *See Central Wesleyan,* 143 F.R.D. at 631–32. Another large state consolidation is currently taking place in Mississippi. *In re Asbestos Personal Injury Cases,* No. 88–5422 (Miss.Cir.Ct.); *see Central Wesleyan,* 143 F.R.D. at 631.

Asbestos property damage litigation began in the early 1980s as building owners confronted the costs of asbestos removal.

Prominent among those trying to rid their buildings of asbestos were local school districts. At Congress' direction, the Attorney General investigated asbestos in the schools and in 1981 concluded that the districts had viable claims against asbestos manufacturers. In 1982, the Environmental Protection Agency required the districts to inspect their buildings for asbestos. In 1983, several school districts filed a proposed national class action in federal court in Philadelphia, and the district court certified both a mandatory class under Fed.R.Civ.P. 23(b)(1)(B) and a voluntary class under Fed.R.Civ.P. 23(b)(3). *See In re Asbestos Sch.Litig.*, 104 F.R.D. 422 (E.D.Pa.1984).

On appeal, the Third Circuit vacated the mandatory class but affirmed the (b)(3) certification. *In re School Asbestos Litig.*, 789 F.2d 996, 998–99 (3d Cir.1986). During these proceedings, at least some asbestos defendants indicated a preference for class certification. Arguing in favor of certification, W.R. Grace & Co. expressed a fear that the asbestos school litigation represented only "the first saplings" of a property litigation "forest" similar to the repetitive morass that the decentralized personal injury litigation had become. After likening the relitigation of certain asbestos issues to "reinventing the wheel thousands of times," the Third Circuit observed that the class action device "appears to offer some hope of reducing the expenditure of time and money needed to resolve the common issues." *Id.* at 1001 & 1010. Although the Third Circuit expressed concerns about the suit's manageability, it acknowledged "the highly unusual nature of asbestos litigation," the district court's willingness "to attempt to cope with an unprecedented situation in a somewhat novel fashion," and its own reluctance "to foreclose an approach that might offer some possibility of improvement over the methods employed to date." *Id.* at 1011.

However, the Third Circuit's ongoing experiment in class certification has not been an unqualified success. Over ten years have passed since the filing of the lawsuit, and no trial has been held. The original district judge has been disqualified from hearing the case, *see In re School Asbestos Litig.*, 977 F.2d 764, 798 (3d Cir.1992), and the current judge has scheduled a hearing to assess the case's manageability. On the other hand, extensive discovery has been completed, and jury selection for the trial's first phase on conspiracy allegations was scheduled to begin in February 1992, before being stayed due to the disqualification. *Id.* at 772. Current settlements have reached an aggregate amount of over $40 million, and settlement discussions continue. The potential remains for the litigation to resolve some 14,000 claims in a single, albeit protracted, action.

Other asbestos property damage litigation has been ongoing, and defendants estimate that approximately 500 cases have been filed since 1981. Among cases brought as individual suits, about thirty have gone to trial with results split between property owners and defendants. Several other suits brought as state class actions have been certified, *see, e.g., National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621 (Tex.Ct.App. 1989) (affirming certification of a class of sixty-seven Texas school districts), while at least one was denied certification, *see Sisters of St. Mary v. AAER Sprayed Insulation*, 151 Wis.2d 708, 445 N.W.2d 723 (Ct.App. 1989) (affirming denial of certification for a national class of hospitals because of manageability concerns).

This history provides some tentative conclusions. First, a number of courts appear receptive to using consolidation and class certification in asbestos cases. This receptivity results from the sheer volume of litigation, the commonality of asbestos' properties and characteristics, and to some extent, the similar ways in which asbestos products have been marketed and utilized. Second, manageability concerns persist in this area. These concerns have given courts pause before granting requests to consolidate or certify, and in some instances, have resulted in denials of such requests. Finally, it is apparent to us that the verdict is still out on the utility of mass asbestos litigation procedures, particularly in the property damage context. Large class actions and the consolidated treatment of asbestos cases continue to offer hope for resolving large numbers of claims. The procedures, however, come with their

own problems. It is with the caution befitting contemplation of any experimental mechanism that we consider the district court's decision.

## B.

Central Wesleyan moved for class certification in this action on December 27, 1988. Prior to that motion, the district court had ordered limited discovery of only certification issues. *Central Wesleyan,* 143 F.R.D. at 634. During this precertification period, plaintiff repeatedly requested discovery concerning defendants' sales of asbestos products to colleges and universities other than Central Wesleyan—what the parties call "product identification" discovery. *Id.* Defendants refused to provide this information, arguing that it went to the action's merits, not to certification. *Id.* Plaintiff responded that it needed this discovery in order to defend the typicality of its claims and the suitability of its class representation. *Id.* The district court eventually permitted the discovery in its grant of conditional certification. *Id.* at 642.

In considering Central Wesleyan's certification motion, the district court conducted a straightforward analysis of the class certification requirements under Fed.R.Civ.P. 23(a) and 23(b)(3). For Rule 23(a)(1) numerosity, the court found that between sixteen to thirty-five percent of America's approximately 3,000 colleges and universities have at least some facilities with friable asbestos and that some 480 potential class members would easily satisfy the numerosity requirement. *Central Wesleyan,* 143 F.R.D. at 636. The court found Rule 23(a)(2) commonality because of the general issues common to asbestos personal injury litigation, as well as other issues common to property damage litigation, such as (1) the friability of categories of asbestos products; (2) the applicability of the government regulations concerning asbestos handling and maintenance; and (3) the inevitable need to remove the asbestos under the regulations. *Id.* For Rule 23(a)(4) adequacy, the

court deemed it "clear that Central Wesleyan is an 'adequate' representative in terms of the vigor with which it has approached the case and the competency of its counsel." *Id.* at 637. The court noted that no college or university had complained about Central Wesleyan's representation of the class and that a vast majority of colleges surveyed had indicated they would not opt out of the class. *Id.* at 637–38.

The district court dealt at greater length with Rule 23(a)(3)'s requirement that Central Wesleyan's claims be "typical of the claims ... of the class." Initially, the court observed that federal regulations requiring asbestos removal "unite[ ] the claims of all colleges with friable asbestos regardless of the exact product involved." *Central Wesleyan,* 143 F.R.D. at 637. It also found that Central Wesleyan's buildings contained "both of the major types of asbestos material involved in this lawsuit—thermal insulation and spray asbestos surfacings." *Id.* The court then responded to defendants' argument, made in terms of adequacy, typicality, and standing, that Central Wesleyan could not represent the class because the college had not shown that each defendant's asbestos products were in its buildings.[1] The court determined that Central Wesleyan could proceed as the class representative because (1) it had alleged nonfrivolous conspiracy claims that gave it standing against all members of the asbestos industry, *id.* at 638 & 646; and (2) defendants' recalcitrance in providing product identification discovery made it difficult to determine which other colleges had received asbestos products from the defendants, *id.* at 638. The court stressed that its findings of standing and typicality were only for "the purposes of conditional certification" and that it reserved "a final decision on the appropriate representative(s) until after the 'product identification' phase of discovery is completed." *Id.*

The district court next turned to the Rule 23(b)(3) requirement that "questions of law or fact common to the members of the class predominate over any questions affecting

---

1. To this point, Central Wesleyan has only identified the products of a single asbestos manufacturer in its buildings. That manufacturer, National Gypsum Company, is in bankruptcy and no longer a party to this litigation. Central Wesleyan responds, however, that it has not completed identification of all the sources of asbestos in its buildings.

only individual members, and that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." The court specifically addressed the four matters the Rule lists as pertinent to these findings. First, it found the colleges' interest in individual litigation slight in comparison to the consensus among potential class members for proceeding on a unified basis. *Central Wesleyan*, 143 F.R.D. at 640. Second, the court determined that there were not so many preexisting college asbestos lawsuits as to make a class action unproductive.[2] *Id.* Third, the court assessed the desirability of South Carolina as a forum, and found "no impediments to this district serving as the forum for this litigation." *Id.* at 641.

The district court addressed at greater length the fourth matter: "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D). The court acknowledged that "[t]here are formidable problems in managing a class of this size," but determined that "certification of a limited number of issues, coupled with subclasses where required, can reduce manageability concerns." *Central Wesleyan*, 143 F.R.D. at 641. The court stressed that such an approach could eliminate "the duplication of effort on common issues" that has plagued the individual handling of asbestos cases. *Id.*

Accordingly, the district court exercised its discretion under Fed.R.Civ.P. 23(c)(1) and 23(c)(4)(A) to certify the class conditionally for a "Phase One certification procedure" on eight common issues. *Id.* at 642. The court identified these issues as (1) whether defendants knew or had reason to know of the health hazards of asbestos (the "state of the art" issue); (2) whether certain categories of asbestos products (fireproofing, acoustical ceiling sprays, thermal insulation) are friable, or are capable of becoming friable as defined by federal regulations, and therefore, must at some time be removed; (3) whether defen-

dants' asbestos products can release asbestos fiber in the course of foreseeable use, including maintenance, renovation, and demolition; (4) whether defendants participated in conspiratorial activities, either industrywide or within segments of the industry; (5) whether defendants failed adequately to test their products for fiber release potential; (6) whether defendants failed to warn users of the potential hazards of their products; (7) whether defendants breached a duty of due care in selling friable asbestos products for use in colleges; and (8) whether defendants' conduct justifies the imposition of punitive damages. *Id.* at 643. The court characterized these questions as "primarily factual," but noted that if separate state laws needed to be applied to these questions, subclasses of plaintiffs could be formed. *Id.* at 643 n. 20.

Also as part of the Phase One proceedings, the district court ordered defendants to comply with plaintiff's requests for product identification discovery, and specifically allowed other colleges and universities the opportunity to intervene. *Id.* at 642. Until it could be determined which colleges and universities had buildings containing which defendants' products, the district court deferred "a final decision on the standing of Central Wesleyan or any additional class Plaintiffs to represent the class against each of the Defendants until after conclusion of product identification discovery." *Id.*

## II.

■ Defendants argue that the district court committed multiple errors in conditionally certifying the class. These arguments stress three themes. First, defendants challenge the appropriateness of Central Wesleyan as a class representative because of problems with standing, adequacy, and typicality. Second, defendants maintain that individual issues will dominate this lawsuit, and that as a result, extreme manageability problems

---

**2.** The district court observed that while "there have been relatively few individual college lawsuits filed," each side has different explanations for this sparsity. *Central Wesleyan*, 143 F.R.D. at 640. Defendants maintain that the colleges simply do not have claims, or at least have no interest in bringing them. Plaintiff responds that

the colleges have been kept informed of this suit's progress through a coordinated campaign and are relying on this action to protect their interests. Whatever the explanation, the district court correctly surmised that the preexisting litigation was not so extensive as to render a class action unproductive.

preclude class treatment. Third, defendants argue more generally that the class mechanism is simply not suitable to asbestos property damage litigation and that the ongoing difficulties in *School Asbestos Litigation* dramatically prove this point. While we are not unsympathetic to defendants' arguments, we are also not prepared to conclude that the district court abused its discretion in tentatively allowing this suit to go forward as a limited purpose class action.

 District courts have "wide discretion in deciding whether or not to certify a proposed class," and their decisions "may be reversed only for abuse of discretion." *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728–29 (4th Cir.1989) (citations omitted); *see also In re Catawba Indian Tribe,* 973 F.2d 1133, 1136 (4th Cir.1992) ("the decision whether to certify a class pursuant to Fed.R.Civ.P. 23 clearly is one committed to the 'broad discretion' of the district court"). Issues of class action manageability are properly committed to the district court's discretion, because that court "generally has a greater familiarity and expertise" with the "practical ... and primarily ... factual" problems of administering a lawsuit "than does a court of appeals." *Windham v. American Brands, Inc.,* 565 F.2d 59, 65 (4th Cir.1977) (en banc); *see also In re School Asbestos Litig.,* 789 F.2d 996, 1011 (3d Cir.1986). Because the district court specifically considered the manageability problems this suit could create, we will reverse only if we are convinced that the court was "clearly wrong" in conditionally certifying the class. *Windham,* 565 F.2d at 65.

Along with the discretion accorded district courts, we note that this circuit has embraced the view that "the mass tort action for damages may ... be appropriate for class action, either partially o[r] in whole." *A.H. Robins,* 880 F.2d at 740. This court also has admonished district courts to "take full advantage of the provision in [Rule 23(c)(4) ] permitting class treatment of separate issues" in order "to promote the use of the class device and to reduce the range of disputed issues" in complex litigation. *Id.* This admonition followed a lengthy discussion endorsing the class device as used in *School Asbestos Liti-*

*gation* itself, *id.* at 735–36, and the statement that if an action "includes multiple claims, one or more of which might qualify as a certifiable class claim, the court may separate such claims from other claims in the action and certify them under the provisions of subsection (c)(4)." *Id.* at 728. Rule 23(c)(4)(A) specifically allows an action to be maintained "as a class action with respect to particular issues." Here, the district court followed the Rule, the *Robins* admonition, and the *School Asbestos* example in conditionally certifying certain claims for class treatment.

Such an approach has its promise. First, the consolidation of recurring common issues may reduce litigation costs. "Experience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception." *School Asbestos Litig.,* 789 F.2d at 1010. The problems created by such repetitious, wasteful presentation of proof in individual asbestos litigation led directly to mass consolidation of personal injury cases, *see In re Asbestos Prod. Liab. Litig. (No. VI),* 771 F.Supp. 415 (J.P.M.L.1991), and to certification of the class of local school districts. *School Asbestos Litig.,* 789 F.2d at 1010. Findings in a common issues trial on even a few of the eight identified questions may eventually save considerable time and judicial resources. Significant economies may be achieved by relieving educational institutions of the need to prove over and over when defendants knew or should have known of asbestos' hazards, or whether defendants engaged in concerted efforts to conceal this knowledge, or even whether certain of defendants' products crumble and release dust under hand pressure.

 Second, we are aware that several asbestos manufacturers already have settled with the class, and that at least four defendants have settled since the district court handed down its decision. This circuit has held that settlement "should be a factor, and an important factor, to be considered when determining certification." *A.H. Robins,* 880 F.2d at 740. Courts should foster settlement in order to advantage the parties and promote "great saving in judicial time and services." *Id.* Here, the prospects for encour-

aging settlement weigh in favor of certification. Defendants' resources are limited; years of litigation have exacted their toll, with several asbestos manufacturers in bankruptcy and more headed in that direction. *See Cimino v. Raymark Indus., Inc.*, 751 F.Supp. 649, 650–51 (E.D.Tex.1990). Settlement of as many of the college claims as possible promises to maximize the resources available to the plaintiff class and minimize the drain on both defendants and the courts. *See School Asbestos Litig.*, 789 F.2d at 1009. We are reluctant to derail the impetus a class action may provide for future settlements.

The tentative, limited nature of the conditional certification also counsels in favor of affirmance. While defendants challenge Central Wesleyan's standing, adequacy, and typicality as a class representative for the entire litigation, the district court made these findings only "for the purposes of conditional certification," *Central Wesleyan*, 143 F.R.D. at 638, and deferred a final judgment on Central Wesleyan's standing until after product identification discovery, *id.* at 642. Defendants' argument that individual issues will swamp the litigation and make it unmanageable also may be premature. The court limited certification to eight common issues and determined that this step could "reduce manageability concerns." *Id.* at 641. Defendants finally jump too precipitously to the conclusion that experiences in the *School Asbestos Litigation* doom this lawsuit to protracted squabbling without tangible results. Lessons hopefully have been learned from the litigation in Philadelphia, and this lawsuit may provide an opportunity to apply them.

For these reasons, we are reluctant to conclude that the district court abused its considerable discretion in conditionally certifying this class for limited Phase One discovery. The district court conducted a careful Rule 23 analysis, and supported each of its 23(a) and 23(b)(3) holdings with detailed findings. The limited certification adopted here was both authorized by the Rule and encouraged by circuit precedent as a valuable tool in addressing mass tort litigation. It would be premature to say that the plaintiff is not correct in its assessment of this lawsuit as an opportunity "to assist in resolving asbestos litigation nationwide" and to avoid some of the "enormous waste of resources" that could accompany individual litigation.

## III.

■■■ While the district court has acted within its discretion and while limited certification of the class may yield significant benefits, it is acknowledged by all that this litigation is not without its difficulties. This enormous undertaking is fraught with potential problems that may well offset the advantages that the class mechanism might afford. Should such a situation develop, class certification may have to be reconsidered. *See Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir.1990) ("an order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate"). Defendants have pointed out various problems they believe render this dispute unsuitable for class treatment. We will discuss the most pressing concerns, and focus on two that pose the greatest difficulties: Central Wesleyan's continuing standing and typicality as a class representative, and the overall manageability of such a complicated class action.[3]

**3.** In addition to raising legitimate concerns, defendants have also responded to the problematic nature of this litigation with several exaggerated claims. Certain of the "problems" they identify do not strike us as such. For example, defendants argue that many of the colleges and universities in the class share state citizenship with one or more defendants, and therefore, that the complete diversity required for federal jurisdiction is not possible. The rule in federal class actions, however, is only that the citizenship of the named plaintiffs be diverse from that of the defendants. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969);

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir.1987).

Defendants also claim that the district court's adoption of an indefinite class renders the certification invalid. Specifically, the class is defined as "all colleges and universities in the United States with friable asbestos containing materials who meet the jurisdictional minimum." Defendants merely assert, however, the unlikely proposition that colleges' claims may be less than the jurisdictional minimum ($10,000 when the action was filed in 1987). They certainly have not shown to the required "legal certainty" that any class members' claims will be less than that

### A.

Defendants complain that Central Wesleyan lacks standing to bring claims against all of them because the college has thus far identified only National Gypsum products in its facilities. Defendants therefore argue that Central Wesleyan has not "personally ... suffered some ... injury" from and has no "direct stake" in pursuing how asbestos producers allegedly harmed other colleges. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–73, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982) (citations omitted). At best, according to defendants, Central Wesleyan may only litigate whether other producers directly assisted National Gypsum in allegedly injuring Central Wesleyan.

The matter, however, is not so simple. The Supreme Court has recognized the "inherent and legitimate authority of the [district] court to issue ... orders of discovery ... as necessary for the court to determine and rule upon its own jurisdiction, including jurisdiction over the subject matter." *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79, 108 S.Ct. 2268, 2272, 101 L.Ed.2d 69 (1988). The district court here explicitly found that defendants "refused to provide Plaintiff's counsel" with discovery about which colleges and universities had been supplied with which defendants' asbestos products. *Central Wesleyan*, 143 F.R.D. at 638. This re- fusal occurred despite the fact that defendants knew Central Wesleyan needed that information to counter challenges defendants might make about its suitability as a class representative. *Id.* at 634. Because the district court found that defendants had "resisted" plaintiff's repeated attempts to secure this information, it deferred making a final ruling on standing until after product identification discovery was provided. *Id.* at 638.

It was not an abuse of discretion to delay ruling on the standing issue until discovery of the relevant underlying facts was complete. *See In re School Asbestos Litig.*, 921 F.2d 1310, 1316 (3d Cir.1990) (noting the district court's "discretionary authority" to defer subject matter determinations). Indeed, to rule otherwise would run the risk of rewarding a party's noncooperation or compelling the district court to rule on a sensitive matter of class action standing before the full facts were even before it. We cannot require the district court to rule on the question of the suitability of named representatives at the same time defendants are withholding information relevant to that determination. We also are mindful of the civil conspiracy allegation here. Specifically, plaintiff alleged that defendants "cooperated and assisted each other in the suppression and active concealment and misrepresentation of the relationship between asbestos and various diseases as early as the 1930s." As with product identification discovery, the district court found that "the record is not complete con-

---

amount. *A.H. Robins*, 880 F.2d at 723. In any event, should any colleges' claims not meet the minimum amount, the proper response is dismissal of those colleges, not dismissal of the entire action. *Id.* at 723 n. 20.

Defendants maintain that the "local action" doctrine bars this suit by requiring that claims for injury to real property be heard by a court sitting in the state where the property is located. Because asbestos property damage actions involve products liability claims, not claims to title or possession of real property, we believe that the claims here are transitory, not local, in nature. *See In re School Asbestos Litig.*, 921 F.2d 1310, 1318–19 (3d Cir.1990). Even applying South Carolina law on transitory versus local claims, the gravamen of this complaint involves a breach of duty for selling a defective product, not damage to the land itself from any action under trespass *clare clausum fregit*. *See Big Robin Farms v. California Spray–Chem. Corp.*, 161 F.Supp. 646, 647–49 (W.D.S.C.1958); *Coastal Mall, Inc. v. Askins*, 265 S.C. 307, 217 S.E.2d 725, 727 (1975). Accordingly, the "local action" doctrine does not bar the suit.

Defendants also maintain that South Carolina's "door closing" statute, S.C.Code Ann. § 15-5-150, blocks this suit by preventing any non-South Carolina colleges from suing non-South Carolina defendants in court in South Carolina. Central Wesleyan, however, is a South Carolina resident whose suits the statute does not bar. *Id.* § 15-5-150(1). Even if non-South Carolina colleges were class representatives, it is doubtful that the statute would apply because of the current countervailing federal policy in favor of consolidating asbestos litigation. *See Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 66 (4th Cir.1965) (federal policy encouraging efficient joinder overrode conflicting state door closing policy).

cerning the existence or contours of such a conspiracy." *Central Wesleyan,* 143 F.R.D. at 638. In light of these findings, it was not an abuse of discretion for the district court to withhold a ruling on questions of standing until it had a complete record before it.

The district court must remain mindful, however, that standing is a threshold, jurisdictional issue, and courts should attempt to resolve such issues as soon as possible. "The rule in federal cases is that an actual controversy must be extant at all stages of review." *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216, n. 10, 39 L.Ed.2d 505 (1974). In the class action context, the Supreme Court has stated that Article III requirements must be met "at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23." *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). Moreover, it is essential that named class representatives demonstrate standing through a "requisite case or controversy between themselves personally and [defendants]," not merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Blum v. Yaretsky,* 457 U.S. 991, 1001 n. 13, 102 S.Ct. 2777, 2784 n. 13, 73 L.Ed.2d 534 (1982) (citations omitted).

Here, the parties appear to recognize two avenues by which standing may be achieved. First, additional class representatives who have been supplied with asbestos products by named defendants could intervene in the action. *See, e.g., Harris v. Ballone,* 681 F.2d 225, 230 (4th Cir.1982) (allowing intervention of proper parties to represent a class even after the original named plaintiff had been found not to have standing). Seven colleges or universities have filed briefs supporting certification with the district court, and at least four of these institutions have indicated a willingness to intervene, although none have yet done so. Second, plaintiff's allegations of civil conspiracy within the asbestos industry could be "particularized" in order to demonstrate more specific links between defendants' actions and Central Wesleyan's alleged injuries. *Brown v. Cameron–Brown*

*Co.,* 652 F.2d 375, 377–78 (4th Cir.1981). While allegations of conspiracy among parties with whom a plaintiff did not directly deal may confer standing upon the plaintiff to sue the nondealing parties, *id.* at 378, the Supreme Court has emphasized that indirectness of injury, though not fatal to standing, "may make it substantially more difficult to meet the minimum requirement of Art. III," *Warth v. Seldin,* 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975), and will require the supplying of "further particularized allegations of fact deemed supportive of plaintiff's standing," *id.* at 501, 95 S.Ct. at 2206. Such particularized allegations would be necessary to support standing on a conspiracy theory here.

In sum, the district court clearly contemplated further proceedings to determine whether Central Wesleyan can produce sufficient facts to support its conspiracy allegations and to determine which other colleges have which asbestos products in at least some of their facilities. Its decision properly recognized the need to resolve the standing issue as soon as the relevant discovery was complete. Contrary to defendants' contentions, the district court did not labor under the misapprehension that class action litigation was somehow liberated from Article III jurisdictional requirements. We believe with the district court that the plaintiff class is due a fair opportunity to establish standing in the record and that defendants are equally entitled to insist that Article III requirements be met.

### B.

Finally, defendants have pointed to manageability problems in this litigation as a reason for denying class certification. We cannot say that their concerns are unfounded. Even assuming that resolution of the eight conditionally certified issues advances the litigation, a daunting number of individual issues still loom beyond the Phase One proceeding. To establish liability, each college and university must demonstrate that a defendant's product has caused, or will cause, the institution to incur the costs of asbestos maintenance and removal. Questions of comparative fault may need to be examined

in light of the role professional engineers and architects at the various colleges played in purchasing, installing, and maintaining the asbestos. Different time bar defenses may need to be considered depending on when class members have removed asbestos from their buildings. Adjudication of damages alone presents an array of issues regarding costs of removal, including the nature of the asbestos product, its condition, location, accessibility, and even labor rates in varying locales.

While *A.H. Robins* and Rule 23(c)(4) make plain that district courts may separate and certify certain issues for class treatment, the "subclass" on each issue still "must independently meet all the requirements of [subsection 23(a) ] and at least one of the categories specified in [subsection 23(b) ]." *A.H. Robins,* 880 F.2d at 728. Thus, a limited class pursuing the eight issues still must possess both (a)(3) typicality and demonstrate (b)(3)(D) manageability. While we agree with the district court that most of the certified issues are primarily factual, some are mixed questions of law and fact, such as whether defendants breached a duty of care and whether they could be liable for punitive damages. Resolution of these issues may require consideration of the laws of the jurisdiction where a particular college or university is located. Instructing a jury on the laws of multiple jurisdictions will be a significant task, and one that has not been resolved in over ten years of *School Asbestos Litigation.* Even the district court's suggested use of subclasses to consider different state laws, *see Central Wesleyan,* 143 F.R.D. at 641 & 643 n. 20, will pose management difficulties and reduce the judicial efficiency sought to be achieved through certification. Similar concerns over a few common issues not predominating over individual questions in asbestos cases previously prompted the Panel on Multidistrict Litigation not to consolidate property damage actions. *In re Asbestos*

*Sch. Prod. Liab. Litig.,* 606 F.Supp. 713, 714 (J.P.M.L.1985).[4]

Both plaintiff and the district court also relied heavily on *In re A.H. Robins Co., Inc.,* 880 F.2d 709 (4th Cir.1989). While *A.H. Robins* supports the proposition that Rule 23 should be flexibly construed, *id.* at 740, the circumstances there differed from this case. *A.H. Robins* was a mass tort suit involving only a single defendant, Aetna Insurance, and a single product, the Dalkon Shield, sold for only four years by a single company, A.H. Robins. Although the case had been litigated for many years on many issues, the class action boiled down to the issue of whether Aetna was a joint tortfeasor in the development and marketing of the allegedly defective product. *Id.* at 741 (this issue "goes to the very heart of the plaintiffs' case here and overhangs the other issues in the litigation"). In contrast, college asbestos litigation involves dozens of defendants, hundreds of asbestos products sold over decades, and a wealth of individual issues, making it less easy to conclude that one issue, or even eight, predominate. This case involves complexities not contemplated in *A.H. Robins,* and the district court should be wary of assuming that the same procedures used in *A.H. Robins* will automatically work here.

As this litigation proceeds, the district court must make certain that manageability and other types of problems do not overwhelm the advantages of conditional certification. Should such concerns render the class mechanism ineffective, the district court must be prepared to use its considerable discretion to decertify the class, *see* 7B Wright, Miller & Kane, *Federal Practice and Procedure* § 1785, at 128–36 (1986), either on a defendant's motion, *see In re School Asbestos Litig.,* 921 F.2d 1338, 1341 (3d Cir.1990), or sua sponte, *see Gerstle v. Continental Airlines, Inc.,* 466 F.2d 1374, 1377 (10th Cir. 1972). If, for example, so many colleges and universities opt out of the voluntary class

---

4. We do note that the Panel on Multidistrict Litigation eventually altered its position on consolidating asbestos personal injury cases as the number of cases escalated. *See In re Asbestos Prod. Liab. Litig. (No. VI),* 771 F.Supp. 415 (J.P.M.L.1991). As more facilities containing asbestos require renovation or demolition, the

number of property damage cases will in all likelihood increase. *See City of Greenville v. W.R. Grace & Co.,* 827 F.2d 975, 982 (4th Cir.1987) (labeling as "specious" the argument that a building would not eventually require renovation or demolition with the necessity to remove asbestos).

that it no longer promises to achieve economies of scale on common issues, the district court should reconsider its conditional certification. If concerns are not allayed over the appropriateness of Central Wesleyan's representation of the class, the certification decision should be reexamined. *See Sessum v. Houston Comm. College,* 94 F.R.D. 316, 322 (S.D.Tex.1982) (collecting cases). If manageability problems with presenting the eight common issues to a jury prove intractable, the court also should consider decertification. *See In re School Asbestos Litig.,* 789 F.2d 996, 1011 (3d Cir.1986) ("[w]hen, and if, the district court is convinced that the litigation cannot be managed, decertification is proper"). If just some of those issues seem to the district court upon reflection not to lend themselves to class treatment, the district court should decertify them.

## IV.

Our acknowledgement of concern about the manageability of this litigation is not intended to forecast its demise. Rather it is to reinforce the point that the course of this litigation is not set and that the district court retains considerable discretion to react to events as they unfold. The course chosen by the district court deserves the chance to succeed in resolving issues of unquestioned importance in this litigation, and it is to be expected that counsel, who have ably argued this appeal, will proceed in that spirit. The district court for its part proceeded with caution in its conditional certification order, and accordingly, did not abuse its discretion in the limited step that it took. For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*